PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1003
_____

RAMARA, INC.

v.

WESTFIELD INSURANCE COMPANY; FORTRESS
STEEL SERVICE, INC.;
SENTRY BUILDERS CORP.; ANTHONY AXE

Westfield Insurance Company,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-07086)
District Judge: Honorable Gerald A. McHugh

_____

Submitted under Third Circuit LAR 34.1(a)
December 11, 2015

BEFORE:  FUENTES, CHAGARES, and GREENBERG,
Circuit Judges

(Filed:  February 17, 2016)

Allan C. Molotsky, Esq.
Dennis Chow, Esq.
Fowler Hirtzel McNulty & Spaulding
2000 Market Street, Suite 550
Philadelphia, PA 19103

    Attorneys for Appellant

Francis S. Blatcher, Esq.
Pamela W. Blatcher, Esq.
Mallon Blatcher
12 South Monroe Street
Media, PA 19063

    Attorneys for Appellee

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before this Court on an appeal from

a supplementary order entered following the District Court's ruling and entry of an order on cross-motions for summary judgment in a case arising out of a workplace accident at a Philadelphia parking garage. Appellee, Ramara, Inc. ("Ramara"), the garage owner, engaged Sentry Builders Corporation ("Sentry") as a general contractor to perform work at its parking garage, and, in turn, Sentry engaged a subcontractor, Fortress Steel Services, Inc. ("Fortress"), to install concrete and steel components as part of the work. As required by its subcontracting agreement with Sentry, Fortress obtained a general liability insurance policy ("the Policy") from Westfield Insurance Group ("Westfield") naming Ramara as an additional insured under the Policy. While Fortress was working on the project in April 2012, one of its employees on the job, Anthony Axe, was injured in an accident. As a result of his injury, Axe filed a tort action against Ramara and Sentry but he did not include Fortress as a defendant as it was immune from actions at law by its employees for injuries suffered on the job if they were entitled to compensation for their injuries under the Pennsylvania Workers' Compensation Act ("Act").[1] Ramara tendered its defense in Axe's action to Westfield. But Westfield declined to defend Ramara as it claimed that Axe's complaint against Ramara did not include allegations imposing that obligation on it under its Policy with its applicable endorsements. Ramara responded by initiating this action.

Both parties moved for summary judgment, and the District Court on November 24, 2014, granted partial summary judgment to Ramara and denied summary judgment to

---

[1] The parties on this appeal do not question that Axe was entitled to compensation for his injuries under the Act.

3

Westfield.  Ramara, Inc. v. Westfield Ins. Co., 69 F. Supp. 3d 490 (E.D. Pa. 2014).  The Court on December 19, 2014, entered a supplemental order that included a quantified judgment in favor of Ramara against Westfield for Ramara's counsel fees and costs incurred to date and ordered that Westfield "prospectively . . . provide defense to Ramara in the underlying action . . . ."  App. 21.  Westfield timely appealed from the December 19, 2014 order.  We address two issues on this appeal:  whether we have jurisdiction and, if so, whether Westfield must defend Ramara in the Axe action.

## II.  JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and, as we will explain, even though Ramara argues that we do not have jurisdiction, we have jurisdiction under 28 U.S.C. § 1292(a)(1).

## III.  STANDARD OF REVIEW

We exercise plenary review in determining whether we have jurisdiction.  See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II), 751 F.3d 150, 155-56 (3d Cir. 2014); Belitskus v. Pizzingrilli, 343 F.3d 632, 639 (3d Cir. 2003).  If "we determine that we do not have jurisdiction over this appeal, our 'only function remaining [will be] that of announcing the fact and dismissing the cause.'"  Elliott v. Archdiocese of N.Y., 682 F.3d 213, 219 (3d Cir. 2012) (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118

4

S.Ct. 1003, 1012 (1998)). If, however, we determine that we have jurisdiction, our review of the District Court's interpretation of the Policy applying Pennsylvania law will be plenary. See Elec. Ins. Co. v. Rubin, 32 F.3d 814, 815 (3d Cir. 1994). In these circumstances, in determining whether the underlying complaint triggered an obligation under the Policy on Westfield to defend Ramara, we view the factual allegations in the complaint as true and "liberally construe[ ] [them] in favor of [Ramara]." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)).

Moreover, we exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d. Cir. 2014), cert. denied, 135 S.Ct. 1738 (2015); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). Under this standard, a court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). But a mere "scintilla of evidence" in the nonmovant's favor does not create a genuine issue of fact, id. at 252, 106 S.Ct. at 2512, and the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009).

## IV.  BACKGROUND

### A.  Factual Background

As we have indicated, Ramara engaged Sentry to be its general contractor for work at its parking garage and on or about February 22, 2014, Sentry contracted with a subcontractor, Fortress, to install concrete and steel components at the garage. Sentry and Fortress memorialized their understanding in a letter ("the Agreement") which required Fortress to provide all labor and equipment necessary to "perform the work in a workman-like manner and in accordance with the acceptable standard of the trade." App. 82.  The Agreement further required Fortress to supervise the project until its completion.  In addition, the Agreement stipulated that "Sentry Builders Corporation and or Ramara, Inc. will NOT be responsible for the procedures or actions of Fortress Steel in its performance or deliveries to complete the work." App. 82.  Finally, the Agreement stated that "Fortress Steel will before commencement of work provide Sentry Builders Corp. insurance for Workmen's Compensation and General Liability with the appropriate limits of coverage, said certificate(s) of insurance shall also include the landlord Ramara, Inc. as additional insured." App. 82.

Westfield issued a Certificate of Liability Insurance showing that Fortress was the named insured under a policy that provided $1 million of primary liability coverage for each occurrence and $9 million of umbrella coverage.  App. 173. Ramara and Sentry were listed as additional insureds under a typewritten section of the certificate entitled "Description of Operations/Locations /Vehicles."  App. 68, 173.  The typewritten section reads: "RE: Project 444 City Avenue –

6

Additional Insureds include Ramara Inc. and Sentry Builders with regard to above referenced project." App. 68, 173. Fortress thereafter began work at the job site.

In April 2012, Axe was injured during the course of his employment by Fortress while working at Ramara's parking garage. Axe filed a lawsuit ("Axe"), the underlying action, seeking damages for his injuries in the Philadelphia County Court of Common Pleas against Ramara, as the property owner, and Sentry, as the general contractor, but he did not include Fortress, his employer, as a defendant, for, as we already have set forth, it would have had immunity in the action by reason of the Pennsylvania Workers' Compensation Act. See 77 Pa. Cons. Stat. Ann. § 481 ("The liability of an employer under this act shall be exclusive and in place of any and all other liability."). When Ramara sought a defense under the Policy, Westfield refused to provide that defense as it contended that the Policy did not insure Ramara for Axe's claims arising from the accident.

B.      Key Provisions of the Policy

Westfield predicated its denial of coverage on its interpretation of several provisions in the Policy now at issue on this appeal. The two provisions that we need consider are the "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You" ("the Additional Insured Endorsement") and an "Other Insurance Endorsement." The Additional Insured Endorsement in relevant part reads as follows:

**A. Section II – Who Is An Insured**

7

is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' **caused, in whole or in part, by**:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

App. 105 (second emphasis added). Westfield argues that for this paragraph to require it to defend Ramara in the <u>Axe</u> case, the complaint in that case must have alleged explicitly that Fortress's acts or omissions proximately caused Axe's injuries.

Ramara responds to Westfield's interpretation of the Additional Insured Endorsement by arguing that it conflicts with the Policy's Other Insurance Endorsement and therefore Westfield's interpretation of the Additional Insured Endorsement would not be harmonious with the totality of the insurance contract. The Other Insurance Endorsement provides, in relevant part:

> When required by written contract with any additional insured owner, lessee, or contractor to provide insurance on a **primary and noncontributory basis**, Condition **4.** of Section **IV** – Commercial Liability Conditions is deleted and replaced by the following:
>
> **4. Other Insurance**
>
> If other valid and collectible insurance is available for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**

9

> This insurance is primary and non-contributory except when **b.** below applies.
>
> **b. Excess Insurance**
>
> This insurance is excess over any of the other insurance, . . .
>
> (4) If the loss is caused by the **sole negligence of any additional insured** owner, lessee, or contractor.

App. 181 (first and last emphasis added). Westfield claims that there is not a written contract providing additional insured coverage to Ramara on a "primary and non-contributory" basis. Thus, it contends that this provision is inapplicable in this case. Ramara, however, maintains that the Policy should be construed in its entirety, to give meaning to all of its provisions. Specifically, Ramara contends, for reasons that we explain below in detail, that when the contract is analyzed as a comprehensive document, Westfield's interpretation of the Additional Insured Endorsement, in effect, would nullify the Other Insurance Endorsement. According to Ramara, if we accept Westfield's interpretation of the Additional Insured Endorsement, there never could be excess coverage under the Other Insurance Endorsement for such coverage would exist only for losses caused by Ramara's "sole negligence" but the Additional Insured Endorsement would provide coverage for Ramara only for acts or omissions "caused in whole or in part" by Fortress or someone acting on its behalf.

10

## C.    Procedural Background

Ramara claims to have expected that as an additional insured under the Policy, it would be protected from bodily injury claims arising out of Fortress's work at the job site. Accordingly, after it received the Writ of Summons from the Axe lawsuit, Ramara tendered its defense to Westfield and requested that it defend Ramara in the Axe case and indemnify it from any judgment against it in that case.  As we explained above, Westfield declined to defend Ramara, claiming that Axe's suit against Ramara did not trigger its obligation to defend Ramara under the Policy and its Additional Insured Endorsement.  In response, Ramara filed a declaratory judgment and breach of contract action against Westfield, Fortress, Sentry, and Axe in the Philadelphia Court of Common Pleas.  But notwithstanding Ramara's inclusion of additional parties as defendants, this case is essentially an action between Ramara and Westfield.  Westfield removed the action to the District Court.

In the District Court, Ramara moved for partial summary judgment on its claim that Westfield had a duty to defend it in the underlying Axe case.  Westfield cross-moved for summary judgment on the claim and sought a ruling that it did not have an obligation to defend Ramara.  Applying Pennsylvania law, the Court granted partial summary judgment to Ramara and denied summary judgment to Westfield in an order on November 24, 2014.  The order included a provision that if Ramara sought reimbursement for its fees and costs to date in the Axe case it should submit an itemized list of these expenses and it gave Westfield an opportunity to object to Ramara's claim. Ramara submitted the list and the Court in a December 19, 2014 order entered judgment against Westfield for $104,965.71, the agreed

11

upon amount of counsel fees and costs that Ramara had accrued to date in defending the <u>Axe</u> case. As part of the December 19, 2014 order, the Court also mandated that Westfield "prospectively . . . provide defense to Ramara in the underlying action . . . ." App. 21.

Westfield filed a timely Notice of Appeal on December 23, 2014, appealing from the December 19, 2014 order.[2] After the appeal was docketed in this Court, Ramara filed several motions in the District Court, including a motion to alter or amend the December 19, 2014 order and a motion to strike Westfield's notice of appeal from the December 19, 2014 order. Westfield opposed both motions. On January 29, 2015, the District Court issued an order that, among other things, granted Ramara's motion to strike Westfield's notice of appeal from the December 19, 2014 order and partially granted Ramara's motion to alter or amend the December 19, 2014 judgment. On March 2, 2015, Westfield filed an amended notice of appeal that included an appeal from the January 29, 2015 order.

---

[2] Though the notice of appeal did not include an appeal from the November 24, 2014 order entered on the summary judgment motions, the parties have addressed matters that the District Court considered in its opinion on those motions. In fact, Westfield starts the statement of the case portion of its brief on this appeal with the following sentence: "Appellant . . . seeks reversal of the district court's orders denying it summary judgment, and entering partial summary judgment in favor of Appellee . . . ." Appellant's br. at 4. Thus, we will consider the Court's reasoning in granting partial summary judgment to Ramara.

Our Clerk by an order on January 5, 2015, directed the parties to submit briefing on the question of whether we have jurisdiction to entertain this appeal. The order noted that the December 19, 2014 order of the District Court from which Westfield had appealed did not appear to "dismiss[] all claims as to all parties and [that it] has not been certified under Fed. R. Civ. P. 54(b)." App. 392. The Clerk subsequently issued a second order on March 30, 2015, affording the parties the opportunity to submit briefing on the District Court's authority to issue an order "striking the notice of appeal . . . ." App. 404. With all briefing now completed, we turn to the questions presented by this appeal.

## V. DISCUSSION

We first must decide whether we have jurisdiction to hear this appeal. See Steel Co., 523 U.S. at 94, 118 S.Ct. at 1012. After all, "[w]ithout jurisdiction the court cannot proceed at all in any cause." Id. (citation omitted). Then, if we conclude that we have jurisdiction, we will interpret the language of the Policy to determine whether the factual allegations in the underlying complaint "potentially" trigger coverage for Ramara in the Axe case. See Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (applying Pennsylvania law). In making these determinations, we view the factual allegations in the underlying Axe complaint as true and liberally construe them in Ramara's favor as the insured. See Frog, Switch & Mfg. Co., 193 F.3d at 746.

A.     We Have Jurisdiction Because the District Court's December 19, 2014 Order is a Mandatory Injunction Under 28

13

U.S.C. § 1292(a)(1).

In its December 19, 2014 order the District Court directed that "[p]rospectively, Westfield shall provide defense to Ramara in the underlying action . . . ." App. 21. Westfield appeals from this order and the January 29, 2015 order amending it. Therefore, the question of whether we have jurisdiction over this appeal hinges on whether the December order qualifies as an injunction under 28 U.S.C. § 1292(a)(1), as that section provides the only possible basis for us to have jurisdiction, or instead is non-appealable.[3] We conclude that the order is an injunction and thus we have jurisdiction to hear this appeal.

A district court's injunctive order, even if it is not a final judgment, is immediately appealable under 28 U.S.C. § 1292(a)(1). See Aleynikov v. Goldman Sachs Grp., Inc., 765 F.3d 350, 356 (3d Cir. 2014). In a determination of whether an order is injunctive, a district court's characterization of its order is not dispositive. Thus, as the cases we discuss will explain, what counts is what the court actually did, not what it said it did. See Sampson v. Murray, 415 U.S. 61, 86-87, 94 S.Ct. 937, 951 (1974). Therefore, if a district court grants an interlocutory injunction, the order granting the injunction is appealable. Tokarcik v. Forest Hills Sch. Dist., 665 F.2d 443, 447 (3d Cir. 1981).

---

[3] Ramara correctly indicates in its brief that the "District Court's December 19, 2014 Order granted only partial summary judgment because [the Court] held that Westfield owed Ramara a duty to defend in the underlying action but left outstanding the question of whether Westfield also owes Ramara a duty to indemnify." Appellee's br. at 15.

We emphasize that rather than using a labeling test, we use a functional test under which the nature of the relief in the order on appeal determines if an order is injunctive. Cohen v. Bd. of Trs. of the Univ. of Med. and Dentistry, 867 F.2d 1455, 1466 (3d Cir. 1989) (en banc). In a functional test analysis, an order is injunctive if it: (1) adjudicates "some of the relief sought in the complaint"; and (2) is "of such a nature that if it grants relief it could be enforced pendente lite by contempt if necessary." Id. at 1465; see also Wright, Miller, Cooper & Gressman, Federal Practice & Procedure § 3922, 29 (3d ed. 1977).

In circumstances similar to those here, we concluded that a grant of partial summary judgment was injunctive and, accordingly, was immediately appealable under 28 U.S.C. § 1292(a)(1). See Aleynikov, 765 F.3d at 356-57. In Aleynikov, the appellee brought suit seeking indemnification and advancement of his attorney's fees from the appellant, his former employer, arising from a criminal prosecution against him relating to his employment. Aleynikov v. Goldman Sachs Grp., Inc., No. CIV. 12-5994 KM, 2013 WL 5739137, at *1 (D.N.J. Oct. 22, 2013). Following expedited discovery, the district court granted the appellee's motion for summary judgment with respect to his claims for advancement of certain fees, but denied his motion with respect to indemnification and indemnification-related fees. Id. at *22.

On appeal, we stated that although the district court did not use the term "injunction" in its order granting partial summary judgment, the "nature of the relief granted" is determinative in deciding whether a remedy is equitable or legal. Aleynikov, 765 F.3d at 356. We concluded that an order that prospectively grants an indeterminate amount of monetary relief

15

is equitable in nature. As we explained in Aleynikov, "where an order for the payment of money is forward-looking and involves an amount that cannot be calculated with specificity, it is equitable." Because the order for partial summary judgment in Aleynikov adjudicated "some of the relief sought in the complaint" and granted relief that "could be enforced pendente lite by contempt if necessary," we concluded that it was immediately appealable under 28 U.S.C. § 1292(a)(1). Id.

Here, the District Court's December 19, 2014 order granted relief similar to that in Aleynikov and thus the December 19, 2014 order is immediately appealable. The order directing Westfield to defend Ramara prospectively is "an order for the payment of money" that is "forward-looking" and currently "indeterminate" because it requires Westfield to pay defense costs for the duration of the Axe action. See Aleynikov, 765 F.3d at 356-57. The order granted Ramara "some of the relief" that it sought in the complaint and was enforceable pendente lite. Nevertheless, Ramara contends that we do not have jurisdiction to review that order because, unlike the appellee in Aleynikov, Ramara does not request indemnification and indemnification-related fees. Ramara's observation is true but inapposite.

We reiterate that Aleynikov makes clear that the relief granted by a district court—not the relief sought by a party—determines whether an order is injunctive. Therefore, even though the appellee's summary judgment motion in Aleynikov sought both indemnification and indemnification-related fees, our analysis focused on the nature of the relief that the district court actually granted by its order to determine whether that order was immediately appealable. Moreover, Ramara's proposed rule would allow a strategically drafted summary

16

judgment motion to block an interlocutory appeal under 28 U.S.C. § 1292(a)(1) from an order entered on the motion any time the movant sought indemnification and indemnification-related fees, regardless of the relief that the district court actually granted. Neither our holding nor our reasoning in Aleynikov supports such a result.

Ramara's motion for partial summary judgment in this case only sought relief with respect to Westfield's duty to defend it in the Axe action.[4] The District Court specifically noted in its January 29, 2015 order that the issue of Westfield's duty to indemnify "is still outstanding and not yet ripe for resolution." App. 24. Nevertheless, the Court's December 19, 2014 order directing Westfield to defend Ramara prospectively in the Axe lawsuit granted forward-looking monetary relief of an indeterminate amount. See Aleynikov, 765 F.3d at 356-57. In these circumstances, Aleynikov controls, and Ramara's claim that our case law does not support Westfield's position that it can appeal under 28 U.S.C. § 1292(a)(1) is simply wrong. See Appellee's br. at 18.

In reaching our result, we also note that other courts of appeals have addressed the precise question before us now. For example, in W Holding Co. v. AIG Ins. Co.-Puerto Rico, the court found that it had jurisdiction over an appeal from a district court order directing the appellant insurer to advance the appellees' defense costs. 748 F.3d 377, 382 (1st Cir. 2014). Reasoning that an order's nature "depends on its operative terms and effects," the court concluded that "the [district] judge's cost-

---

[4] Ramara also moved for summary judgment regarding its related claim for breach of contract for failure to defend, but we need not discuss this claim.

17

advancement order certainly seem[ed] to fit the bill" of an appealable injunction under 28 U.S.C. § 1292(a)(1). Id. at 382-83 (citations and internal quotation marks omitted). Similarly, in Westar Energy, Inc. v. Lake the court determined that it had jurisdiction over an appeal from a district court's order that directed the appellant corporation to advance criminal defense costs to the appellee on a prospective basis. 552 F.3d 1215, 1221, 1224 (10th Cir. 2009). Although the district court granted relief in that case that "was not labelled an injunction," the court of appeals nonetheless concluded that the relief was "equitable in nature" and therefore the order was immediately appealable under 28 U.S.C. § 1292(a)(1). Id. at 1223-24.

There are other courts of appeals' decisions supporting our result. For example, in Pacific Insurance Co. v. General Development Corp. the court found that it could exercise jurisdiction over a district court's order granting partial summary judgment to appellees and directing the appellant insurer to pay their defense costs pending resolution of its rescission claim. 28 F.3d 1093, 1095-96 (11th Cir. 1994). Because the interlocutory order mandated that the "insurer pay [] defense costs," the court held that it was an immediately appealable injunction for purposes of § 1292(a)(1).[5] Id. at 1096 (citation omitted); see also Abercrombie & Fitch Co. v. Fed. Ins. Co., 370 F. App'x 563, 567, 568 (6th Cir. 2010) (holding that a district court's order "enjoining [the insurer] from failing and refusing to pay" the appellee's defense costs "fit[s] the requirements . . . . [of] an injunctive order, over which we have jurisdiction under 28 U.S.C. § 1292(a)(1)"); Gon v. First State Ins. Co., 871 F.2d 863, 866 (9th Cir. 1989) (finding that an order

[5] The court of appeals dismissed the appeal as moot for reasons that we need not explain as they are immaterial here.

18

directing an insurer to pay the insured's defense expenses as they were incurred "met the general definition of an injunction" and was immediately appealable).

In light of our reasoning buttressed by decisions of other courts of appeals, we are satisfied that we have jurisdiction over the District Court's December 19, 2014 order directing Westfield to defend Ramara prospectively. Although the order did enter judgment in Ramara's favor against Westfield for $104,965.71 in already-accrued legal fees and costs—relief that is legal in nature—the order also directed Westfield to defend Ramara going forward and thus it granted equitable relief and was immediately appealable. Though Ramara moved to amend the December 19, 2014 order by striking its forward-looking language as it contends that it did not seek that relief in the District Court, the Court's January 29, 2015 order clarified that the December order had not terminated the entire action and did not remove the forward-looking relief.[6] App. 26.

---

[6] The District Court said in its January 29, 2015 order that the December 19, 2014 order should not be "considered a dismissal of this action." App. 26. We are confident that the Court intended to say that the order did not terminate the action. Though, as we explain below, the District Court did not have jurisdiction to alter or amend the December 19, 2014 order after Westfield filed its initial appeal, nevertheless we see no reason why we should not consider the January 29, 2015 order when we determine the Court's intent in entering the December 19, 2014 order. It may seem strange that Ramara moved to strike the seemingly favorable, forward-looking relief from the December 19, 2014 order, but it may have done so in the hope of that order being a final order subject to execution. We do not address the possible question of whether if Westfield challenged the

19

It is clear that the relief the District Court granted by its December 19, 2014 order is prospective, grants some of the relief that Ramara requested, and could be enforced pendente lite by contempt, if necessary. See Cohen, 867 F.2d at 1466. Despite the District Court's characterization of the December 19, 2014 order in its January 29, 2015 order as one granting "specific performance of a contract term," App. 25-26, the relief granted in the December 19, 2014 order was in part equitable. Consequently, the District Court's December 19, 2014 order includes a mandatory injunction and is immediately appealable at least to the extent that it granted equitable relief under 28 U.S.C. § 1292(a)(1).[7]

---

$104,965.71 judgment on the ground that it was excessive we could review that noninjunctive aspect of the December 19, 2014 order for the parties agreed on the computation. As a practical matter, we do not doubt that if Westfield prevailed on the merits on its injunctive appeal it would seek relief in the District Court from the monetary judgment.

[7] The Clerk of this Court issued an order on March 30, 2015, affording the parties the opportunity to submit argument relating to whether the District Court had authority to issue orders striking Westfield's notice of appeal, and whether it had authority to strike Westfield's then-pending amended notice of appeal. The parties submitted arguments on the topic, but on April 20, 2015, the District Court issued an order denying Ramara's motion to strike Westfield's amended notice of appeal as moot because this appeal was pending. In any event, it is clear that we have jurisdiction over this appeal and thus the District Court lacked authority to strike Westfield's notice of appeal. See Murphy v. Fed. Ins. Co., 206 F. App'x 143, 147 (3d

B. Ramara as an Additional Insured under the Policy is entitled to a Defense in the Axe Case.

With the jurisdictional issue behind us, we turn now to the question of whether the underlying complaint supported the District Court's conclusion that Westfield owed Ramara a duty to defend it in the Axe lawsuit. An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to indemnify." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005) (citations omitted). Because an insurer's duty to defend its insured in a lawsuit is broader than

Cir. 2006) ("In Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985), we pointed out that as a general rule 'the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal.'"); Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc., 198 F.3d 391, 394 (3d Cir. 1999) ("It is well established that '[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" (citation omitted)); cf. Fed. R. App. P. 42(a) (stating that a district court's ability to grant a motion to withdraw an appeal is limited to the time "before an appeal has been docketed by the circuit clerk"). Importantly, Ramara filed its first motion in the District Court to strike Westfield's notice of appeal on January 6, 2015, which was after the Clerk docketed Westfield's notice of appeal. Finally, we point out that inasmuch as we have jurisdiction any ruling on the District Court's authority to issue such orders would not change or alter our result.

its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense.  Id. (citations omitted).[8]  Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint.  Id. at 226; see also Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997).  If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case.  Sikirica, 416 F.3d at 226 (citing Gen Accident Ins. Co. of Am., 692 A.2d at 1095).

As the Pennsylvania Supreme Court has explained, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover."  Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987) (citations omitted); see also Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953-54 (Pa. Super. Ct. 1992) ("If coverage (indemnification) depends upon the existence or nonexistence of

---

[8] We are concerned here with a situation in which the insured, Ramara, in this litigation is relying on only a single insurance policy for coverage.  Thus, we do not suggest that when multiple policies cover a single loss, such as when there is excess coverage over basic coverage, that the excess insurer cannot have a duty to indemnify an insured even though it did not have a duty to defend the insured against the action.

undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured."). Importantly, Pennsylvania adheres to the "four corners" rule (also known as the "eight corners" rule), under which an insurer's potential duty to defend is "determined solely by the allegations of the complaint in the [underlying] action." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) ("Kvaerner") (emphasis in original) (citation omitted). Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence. Id.[9]

To determine whether based on its factual allegations an underlying complaint triggers an insurer's duty to defend, a court views the allegations as true and "liberally construe[s them] in favor of the insured." Frog, Switch & Mfg. Co., 193 F.3d at 746 (citation omitted). An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010) ("As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend . . . . [I]t is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.") (citation and internal quotation marks omitted). Thus, an insurer has a duty to defend if there is any

---

[9] There will be eight corners because a court in deciding if there is coverage will look at both the insurance policy and the underlying complaint.

23

possibility that its coverage has been triggered by allegations in the underlying complaint. Id. With these principles in mind, and after reviewing the Policy with its endorsements, we conclude that Westfield has a duty to defend Ramara in the Axe action because based on the factual allegations in the complaint the Axe complaint potentially triggers coverage.

1. The Allegations of the Axe Complaint Potentially Implicate Fortress Under Both a "Proximate Cause" or "But For" Causation Standard.

At bottom, this case concerns whether the Axe complaint sufficiently alleges, as required by the Additional Insured Endorsement, that Axe's injuries potentially were "caused, in whole or in part" by Fortress's acts or omissions or the acts or omissions of someone acting on Fortress's behalf. If it does, then Ramara is an additional insured under the Policy with respect to the Axe action and is entitled to a defense in that case. If it does not, then Ramara is not an additional insured with respect to the Axe action and Westfield does not have a duty to defend Ramara. We decide this question by comparing the allegations of the Axe complaint to the language of the Policy. See Kvaerner, 908 A.2d at 896. We reiterate that our interpretation of the Policy is a question of law over which we exercise plenary review. See 401 Fourth Street v. Investors Ins. Co., 879 A.2d 166, 170 (Pa. 2005). In addition, we must construe any ambiguities in the Policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Kvaerner, 908 A.2d at 897 (citation omitted).

In support of its contention that the allegations of the Axe

24

complaint fall outside of the Policy, Westfield first relies on language in the Additional Insured Endorsement. Specifically, Westfield claims that under Dale Corp. v. Cumberland Mutual Fire Insurance Co., No. 09-1115, 2010 WL 4909600 (E.D. Pa. Nov. 30, 2010), the endorsement's language that requires Axe's "bodily injury" to be "caused, in whole or in part" by Fortress's acts or omissions, or someone acting on its behalf, limits coverage to situations in which Axe explicitly alleges that Fortress proximately caused his injuries. Westfield contends that the Axe complaint does not contain such allegations and therefore it does not have a duty to defend Ramara in the Axe action.

In response, Ramara largely repeats the arguments that it made in the District Court. Ramara starts from the premise that Pennsylvania courts have not interpreted the "caused, in whole or in part" language of the Additional Insured Endorsement. Ramara then asserts that the interpretation advanced by the district court in Dale Corp. and on which Westfield relies is more restrictive than that which the Pennsylvania Supreme Court likely would adopt. Ramara contends that Fortress's conduct need only have been a "but-for" cause of Axe's injuries to entitle it to a defense in the Axe case. Moreover, Ramara maintains that even if we adopt Westfield's "proximate cause" argument with respect to Fortress's conduct, the allegations of the Axe complaint still would entitle it to that defense.

Like the District Court, we find that Westfield must defend Ramara under either the "but-for" or "proximate cause" interpretation of the Additional Insured Endorsement. Because a proximate cause requirement is more demanding than a but-for cause requirement—meaning that allegations satisfying the former necessarily will satisfy the latter, though the opposite is

25

not true but is possible—we first will consider whether the allegations of the <u>Axe</u> complaint suffice under the proximate cause test. Proximate causation is defined as a cause which was "a substantial factor in bringing about the plaintiff's harm." <u>Bouriez v. Carnegie Mellon Univ.</u>, 585 F.3d 765, 771 (3d Cir. 2009); <u>see also</u> <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978); Restatement (Second) of Torts § 431 (1965). The concept is essentially a limiting principle that functions as "shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes." <u>CSX Transp., Inc. v. McBride</u>, 131 S.Ct. 2630, 2642 (2011).[10] We therefore must determine whether the <u>Axe</u> complaint potentially alleges that Fortress's acts or omissions were a substantial factor in Axe being injured.

The <u>Axe</u> complaint is rife with allegations satisfying the proximate cause test. In his complaint, Axe alleges that Fortress employed him at the time of his accident, and that Sentry engaged Fortress as an independent contractor.[11] He claims that

---

[10] A clear example of a "but-for" cause of an injury that is not its proximate cause is if a cab is late in picking up a fare and, while taking the fare to his destination, is involved in an accident while being driven without any negligence or excess speed. The driver's tardiness would be a but-for cause of the accident because the accident would not have happened if the cab had been on time for if it had been on time it would not have been at the scene of the accident. Nevertheless, the driver would not be liable on a theory that he was late, because his lateness would not be regarded as a proximate cause of the accident.

[11] Westfield emphasizes that the <u>Axe</u> complaint characterizes Fortress as Sentry's "independent contractor" rather than its

he was injured severely when he fell through an opening in the garage deck while attempting to set beam clips in the course of his normal duties at the job site. Axe also alleges that Ramara "act[ed] by and through its agents, servants and/or employees" and "fail[ed] to adequately inspect and monitor the work performed." App. 47; App. 49. As the District Court observed, if Axe was injured during the course of his normal duties at the job site, and the injury was caused by the acts or omission of Ramara's "agents," "contractors," or "subcontractors"—of which Fortress was one—these allegations raise at least the potential that Fortress's conduct was a proximate cause of his injuries. Ramara, 69 F. Supp. 3d at 496.

In addition, Axe pleads that Ramara "failed to provide and require that equipment be used in accordance with industry standards." App. 49. He further avers that Ramara "employed and/or retained, or [was] obligated to employ field personnel,

---

subcontractor. Appellant's br. at 18; Appellant's reply br. at 7 n.1. But an analysis of the allegations of the Axe complaint makes it clear that Fortress potentially is implicated as one of Ramara's contractors or subcontractors and the circumstance that it may have been an "independent contractor" would not change that result. After all, the Axe complaint hinges liability on Ramara's acts and omissions by and through its "contractors and subcontractors," and thus the complaint has at least the potential to implicate Fortress. This result is especially clear inasmuch as we must liberally construe the factual allegations of the underlying complaint in favor of Ramara. See Frog, Switch & Mfg. Co., 193 F.3d at 746 (citation omitted) (explaining that to determine whether an underlying complaint triggers an insurer's duty to defend, its factual allegations must be "liberally construed in favor of the insured").

27

project supervisors and safety inspectors to inspect the work being performed" at the job site. App. 49. Yet, Fortress's employees used equipment that Fortress owned and performed work that Axe asserted necessarily fell within the scope of Ramara's supervision. App. 82. Finally, Axe claims that Ramara was negligent by failing to: (1) hire competent contractors and subcontractors; (2) perform "construction services" in manner consistent with the prevailing standard of care in the construction industry; (3) supervise the construction work; (4) coordinate with the other entities and subcontractors on the premises; and (5) enforce a site specific fall protection plan. App. 52-53.

Taken together and construed liberally in favor of Ramara for purposes of this insurance coverage case, these allegations partially base Ramara's liability on its failure to supervise the work of its contractors or subcontractors who used equipment improperly and disregarded a site specific fall protection plan, all while performing their work in violation of the industry's standard of care. Fortress, though engaged by Sentry, was one of Ramara's subcontractors, and Axe's employment by Fortress was the sole reason that Axe was at the job site and was injured. Clearly, Axe made factual allegations that potentially would support a conclusion that Axe's injuries were "caused, in whole or in part" by Fortress's acts or omissions. Of course, we need not and, indeed, cannot decide whether Axe will succeed on these claims at trial. Ramara only must show that the Axe complaint, when liberally construed in favor of Ramara, includes allegations to support a conclusion that Fortress was potentially negligent and that its negligence was a proximate cause of Axe's injuries. We conclude that it does. Accordingly, Ramara comes within the Additional

28

Insured Endorsement of the Policy with respect to the Axe case. Therefore, Ramara is entitled to a defense in the Axe case even under Westfield's narrow interpretation of the Additional Insured Endorsement limiting coverage to situations in which an insured's contractor's actions proximately caused a plaintiff's injuries.

2. The Other Insurance Endorsement Supports Ramara's Interpretation of the Additional Insured Endorsement.

Although Ramara qualifies as an additional insured under either the "but-for" or "proximate cause" interpretation of the Additional Insured Endorsement, we point out that Ramara's but-for causation interpretation is correct. In the District Court, Ramara argued that the language of the Additional Insured Endorsement was not easy to reconcile with the Other Insurance Endorsement under Westfield's proximate cause interpretation. The District Court agreed, concluding that the language of the Other Insurance Endorsement supported Ramara's interpretation. We also conclude that the Other Insurance Endorsement supports Ramara's but-for reading.

A court's function when interpreting an insurance policy under Pennsylvania law, is "to ascertain the intent of the parties as manifested by the language of the written instrument." Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (citation and internal quotation marks omitted). A court must read the policy "as a whole and construe[ ] [it] according to the plain meaning of its terms." C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981). A court construes commonly used words and phrases "in their natural, plain, and ordinary sense, with [the] court free to consult a dictionary to inform its understanding of terms." Am. Auto.

29

Ins. Co., 658 F.3d at 320-21 (citations and internal quotation marks omitted). But if those terms are open to more than one interpretation, they are regarded as ambiguous. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). It is well established that "[a]mbiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." Id. at 104 (citation omitted). Pennsylvania courts apply this rule liberally. Id.

Under the Policy, the Other Insurance Endorsement provides that an additional insured such as Ramara is entitled to excess coverage for a loss caused by its sole negligence. The District Court concluded that under Westfield's proximate cause interpretation of the Additional Insured Endorsement it would be impossible for an additional insured to have excess coverage under the Other Insurance Endorsement. The District Court reasoned that a loss caused by Ramara's sole negligence—which is necessary to trigger excess coverage under the Other Insurance Endorsement—could not be proximately caused simultaneously by Fortress's acts or omissions which Westfield contended was necessary for Ramara to have coverage. Ramara, 69 F. Supp. 3d at 497. On appeal, Westfield argues that: (1) the apparent discrepancy between the Other Insurance and Additional Insured Endorsements under its interpretation is immaterial because the former endorsement is inapplicable to this case; and (2) as a result, the District Court's discussion of the Other Insured Endorsement constituted an advisory opinion. We cannot agree on either of these points.

Courts must interpret an insurance policy as one, harmonious document and resolve ambiguities in favor of coverage. See Med. Protective Co., 198 F.3d at 104; C.H. Heist

30

Caribe Corp., 640 F.2d at 481. In interpreting a policy as a whole, and resolving potential ambiguities, a court often must compare the language used in one provision of the policy with the language in another provision. Indeed, it would be difficult for a court to read a policy as a comprehensive document and unearth potential ambiguities if the court was required to interpret the provisions of a policy in isolation. Moreover, if a relevant provision is shown to be ambiguous, other policy provisions can assist a court in assessing whether the insured party's interpretation of that provision is reasonable. Inasmuch as the District Court's understanding of the Other Insured Endorsement supported its result, its discussion of the point cannot be dismissed as an advisory opinion.

### 3. The Pennsylvania Workers' Compensation Act.

Finally, Westfield argues that coverage was not triggered because one party is conspicuously absent from the allegations in the Axe complaint: Fortress. Indeed, Axe explicitly names Fortress only once in his underlying complaint, stating that Fortress was his employer at the time that he was injured. As a result, Westfield maintains that the Axe complaint is "silent as to any acts or omissions by Fortress," and thus Westfield does not have a duty under the Policy with the Additional Insured Endorsement to defend Ramara when Pennsylvania's four corners rule is applied.

The District Court disagreed, finding that the sparse reference to Fortress in the Axe complaint was understandable in light of the Workers' Compensation Act's grant of tort immunity to employers for workplace injuries to their employees. Ramara, 69 F. Supp. 3d at 500-01; see also 77 Pa. Cons. Stat. Ann. § 481 ("The liability of an employer under this

act shall be exclusive and in place of any and all other liability to such employes."). Due to the immunity from tort liability afforded to employers for injury to their employees in circumstances in which compensation is provided by the Act, the District Court reasoned that Westfield's narrow interpretation of the underlying complaint "ignore[d] the realities of the worksite" and "the effect of the Pennsylvania Workers' Compensation Act." Ramara, 69 F. Supp. 3d at 499. On appeal, we must decide whether the District Court's consideration of the Act and its effect on pleading violated Pennsylvania's four corners rule.

At the outset, we find it instructive to retrace the boundaries of the four corners rule. In Pennsylvania, a determination of whether an insurer has a duty to defend is made "solely by [consideration of] the allegations of the complaint in the [underlying] action." Kvaerner, 908 A.2d at 896 (emphasis in original) (citation omitted). However, "[i]f coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside the complaint, until the [plaintiff's] claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured." Stidham, 618 A.2d at 953-54. If the complaint "might or might not fall within the policy's coverage, the insurance company is obliged to defend." Am. & Foreign Ins. Co., 2 A.3d at 541 (citations and internal quotation marks omitted). It is therefore "the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." Id.

This understanding of the four corners rule is important, because neither our own research nor the parties' briefing has revealed a case in which we previously have spoken on how a

32

court should deal with the practical effects of the Workers' Compensation Act on pleadings where Pennsylvania's four corners rule is relevant. In a factually analogous case, however, a district court persuasively emphasized substance over form while making a determination faithful to the four corners rule. The court explained:

> The purpose behind [the four corners rule] is that an insurer should not be required to defend a claim when it is apparent on the face of the complaint that none of the injuries fall within the purview of the insurance policy. Given the circumstances of this case, that purpose would not be well served by blindly following Plaintiff's insistence that the Court apply the most restrictive interpretation of the four corners rule. Due to the immunity conferred by the Workmen's Compensation Act, [the plaintiff in the underlying action] could not have sued his employer, . . . and, thus, would not have included any allegations about [it] in his underlying complaint. Nonetheless, [the insurer] has expressly stipulated that it knew [the plaintiff] was injured while performing duties on a job site in the scope of his employment with

33

[the insured]. . . . Given [the insurer]'s obvious knowledge of the existence of facts that could trigger coverage and its awareness of [the plaintiff]'s reason for not including them, it would be both illogical and unjust for this Court to find that [the insurer]'s duty to defend was not triggered.

Selective Ins. Co. v. Lower Providence Twp., No. 12-0800, 2013 WL 3213348, at *10 n.6 (E.D. Pa. June 26, 2013) ("Selective Insurance"); see also Dale Corp., 2010 WL 4909600, at *7 n.6.

Importantly, the Selective Insurance court considered the Workers' Compensation Act's effects as part of the broader context within which the factual allegations of the underlying complaint were made, and within which the insurer denied coverage. But the court considered the Act only to the extent that the consideration was useful in a determination of whether the factual allegations of the complaint potentially fell within the scope of coverage. We find this analytical approach to be consistent with Pennsylvania's four corners rule and applicable to this case.

With Selective Insurance in mind, it is clear that the District Court properly considered the effect of the Workers' Compensation Act. The four corners rule—even under Pennsylvania's strict construction—does not permit an insurer to make its coverage decision with blinders on, disclaiming any knowledge of coverage-triggering facts. Quite the opposite, knowledge that an injured employee has a claim under the

34

Workers' Compensation Act must be factored into a determination of whether his allegations in an underlying tort complaint potentially trigger an obligation on an insurer to provide coverage for a defendant in the underlying case. If an insurer fails to account for the Act it may construe the factual allegations of an underlying complaint too narrowly, and "the insurer who refuses to defend at the outset does so at its own peril." Aetna Cas. & Sur. v. Roe, 650 A.2d 94, 99 (Pa. Super. Ct. 1994).

It is also proper to consider the Workers' Compensation Act because the factual allegations of an underlying complaint must "be taken as true and liberally construed in favor of the insured." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (citation and internal quotation marks omitted). In cases in which the Act is relevant, a liberal construction of the factual allegations of the underlying complaint often may result in the complaint triggering coverage where the same allegations might appear insufficient in the absence of the Act. Indeed, Westfield's narrow interpretation of the factual allegations of the Axe complaint provides an apt example of how proceeding as though the Act is irrelevant risks leaving an insured party without the coverage to which it is entitled. Westfield's approach would turn what is meant to be a liberal construction rule on its head; it would disfavor insured parties and permit insurers to deny coverage under the Additional Insured Endorsement in all but the most clear-cut cases in which the plaintiff pleads his underlying complaint so as to avoid attributing his injury to his employer's acts or omissions. But the courts have made clear that ambiguities in insurance policies with respect to the scope of coverage are resolved in favor of there being coverage, and Westfield cannot escape its obligation

35

to defend Ramara under any interpretation of the four corners rule or the Policy language.

We emphasize that in affirming the District Court's analytical approach we do not intend our opinion to be read as an expansion or modification of Pennsylvania's strict interpretation of the four corners rule. See, e.g., Kvaerner, 908 A.2d at 896; see also State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 108 n.3 (3d Cir. 2009). Indeed, inasmuch as we are applying Pennsylvania law we could not do so. Clearly, a court taking into account the four corners rule must take care to base its analysis of the complaint on its factual allegations. Rather, we hold that where the Workers' Compensation Act is relevant to a coverage determination, insurers (and the courts that review their determinations) must interpret the allegations of an underlying complaint recognizing that the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the Act into account.[12] In this way, the Act operates as an interpretive constraint, making it more difficult for insurers to claim that the allegations of an underlying complaint fall patently outside the scope of

---

[12] We are not suggesting that insurers have a duty to make investigations to find facts or information beyond those set forth in the complaint in order to find a basis for triggering coverage. Thus, we cannot agree with Mortgage Express Inc. v. Tudor Insurance Co., 771 N.W.2d 137, 147 (Neb. 2009), to the extent that it broadly indicated that "[i]n determining its duty to defend, an insurer must not only look to the petition or complaint filed against its insured, but must also investigate and ascertain the relevant facts from all available sources."

36

coverage.[13]  This result is consistent with the four corners rule and the principles underlying policy interpretation itself.  See Kvaerner, 908 A.2d at 897 (explaining that if any provision of an insurance policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage").

The District Court simply reaffirmed what should be obvious: an insurer cannot bury its head in the sand and disclaim any knowledge of coverage-triggering facts.  See, e.g., Revelation Indus., Inc. v St. Paul Fire & Mar. Ins. Co., 206 P.3d 919, 928 (Mont. 2009) ("An insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint—which is, after all, drafted by a claimant over whose draftsmanship the insured has no control—does not allege these facts of which the insurer has knowledge."). Westfield was certainly aware of the Workers' Compensation Act's limitation on the type of allegations that Axe could bring when it decided to deny coverage to Ramara.  Westfield also surely knew that despite the circumstance that the Act does not contain pleading limitations in third party actions, the practical effect of its grant of tort immunity to employers was that Axe's attorney in drawing the complaint neither would explicitly name Fortress nor feature it prominently in the complaint's allegations.  Within this context and applying Pennsylvania law,

---

[13] We do not question the right of an insurer to undertake a defense of its insured under a reservation of rights or to bring a declaratory action to settle the scope, if any, of its obligations under its policy.

Westfield could not have determined reasonably that the allegations of the Axe complaint were patently outside the Policy's coverage. The District Court properly compared the allegations of the Axe complaint to the language of the Policy under Pennsylvania's four corners rule, and it correctly found that Ramara qualifies as an additional insured entitled to a defense in the Axe case under the Policy. It did not err by not making this determination in a vacuum.

## VI. CONCLUSION

We conclude our opinion with a disposition of Westfield's appeal with respect to the January 29, 2015 District Court order. As we indicated, that order purported to alter or amend the December 19, 2014 order even though Westfield already had appealed from the December 19, 2014 order. As we further indicated, the District Court did not have jurisdiction to alter or amend the December 19, 2014 order with respect to the aspects of that order on appeal. See infra note 7. Consequently we will vacate the January 29, 2015 order to the extent that it purported to alter or amend the December 19, 2014 order. Inasmuch as there are no issues on this appeal with respect to the January 29, 2015 order other than those with which we have dealt, except to the extent that we are vacating the January 29, 2015 order, we will dismiss the appeal from that order.

In dealing with the merits of this appeal from the December 19, 2014 order, for the reasons we have stated we will affirm the District Court's order to the extent that it provided that Westfield has a duty to defend Ramara in the underlying Axe action. Though we recognize that we are not in terms affirming the order for the payment of fees and costs accrued to

date in the amount of $104,965.71, the effect of our opinion is to uphold that order. We are not dealing in express terms with that aspect of the December 19, 2014 order, see infra note 6, because it is not an award of forward-looking injunctive relief and the parties have not briefed the question of whether Westfield can appeal at this time from that portion of that order.