**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1049
_____

DAMIEN MIKELL,
                              Appellant

v.

LOUIS FOLINO, Former Superintendent 2;
ROBERT GILMORE, Former Superintendent 1;
JEFFREY R. ROGERS, Corrections Classification and Program Manager;
JABULANI SIBANDA, Corrections Facility Chaplaincy Program Director;
ABUBAKAR MUHAMMAD, Corrections Chaplain;
MICHAEL DECARLO, Corrections Food Service Manager 1;
WALLY DITTSWORTH, Corrections Food Service Manager 2
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2-14-cv-01112)
Magistrate Judge: Honorable Maureen P. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2018

Before: JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed February 13, 2018)
_____

OPINION[*]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellant Damien Mikell appeals the District Court's grant of summary judgment for defendants on his claim that his First Amendment right to exercise his religion was violated by a number of prison officials during the course of his incarceration at the State Correctional Institution at Greene ("SCI-Greene"). For the reasons that follow, we will affirm the District Court's judgment.

I.

Because we write primarily for the benefit of the parties, we will only recite the facts necessary for our discussion; these facts are undisputed unless otherwise noted. On July 19, 2012, Mikell was transferred to SCI-Greene from another state institution. Upon his arrival at SCI-Greene, he was housed in the Restricted Housing Unit. The following day, on July 20, 2012, Mikell refused two meals, stating that he was observing the Ramadan fast, which had just begun the previous evening. He also submitted requests to a Food Service Supervisor seeking to receive pre-dawn and post-sunset meals during the fast and to the Chaplaincy Department to be placed on the Ramadan participation list. On July 23, Food Service Manager Wally Dittsworth advised Mikell to contact the Chaplaincy Department to participate in the Ramadan fast. Two days later, he received a response from the Chaplaincy Department, in which Abubakar Muhammad, a Corrections Chaplain, attached forms Mikell needed to return to be added to the participation list. Mikell completed and returned the forms that day; his name was

2

subsequently added to the Ramadan participation list.[1] Despite this, Mikell never received any of the pre-dawn or post-sunset meals that would have allowed him to fast for Ramadan once he was placed on the participation list.

Mikell maintains that in the days following July 25, he received individual cell visits from SCI-Greene's Facility Chaplaincy Program Director, Jabulani Sibanda, and Corrections Chaplain Muhammad. He claims that Sibanda told him that his name had been placed on the Ramadan participation list and that he would immediately begin to receive meals that would allow him to fast.[2] Muhammad allegedly told Mikell that if his name had been added to the Ramadan participation list, he would begin to immediately receive the appropriate meals.

Mikell does not allege taking any further action until August 13, 2012, when he submitted an inmate grievance form indicating that he had not received meals that allowed him to fast despite his completion of the required institutional forms to be added to the Ramadan participation list. In it, he indicated that Muhammad had visited him at his cell on August 2 and advised him that he would be placed on the list to participate in the fast if he met all of the requirements to participate. Mikell only mentioned one other

---

[1] The record conflicts with the parties' representations of when Mikell was added to the participation list. This date is immaterial to our resolution of his claims.

[2] Sibanda disputes Mikell's account of this cell visit but also claims that he personally provided Mikell with the Ramadan participation paperwork before July 25.

institutional employee in the body of his grievance, who is not a party to this case.  The grievance was received on August 15, 2012; Sibanda denied the grievance on August 27.

Ramadan ended on August 18.  Mikell represents that he accepted every regularly scheduled meal that was brought to him throughout the entire month of Ramadan after July 20.  He claims that he did so because he was saving food items to consume as a pre-dawn and post-sunset meal every day.  Defendants represent that Mikell was likely not provided the meals to participate in the fast because he accepted his regularly scheduled meals throughout the month of Ramadan.  SCI-Greene's Ramadan participation form states that inmates who consume regularly scheduled meals may be removed from participation in the fast.  However, defendants have not definitively established why Mikell failed to receive the meals.

Mikell pursued his administrative appeal through the highest level, but his final appeal was ultimately dismissed as untimely in January 2013.[3]  He filed a complaint in the District Court in August 2014, seeking damages and injunctive relief under 42 U.S.C. § 1983 against numerous prison officials in their individual capacities for infringing on

---

[3]  It does not appear that Mikell properly exhausted his administrative remedies.  See Woodford v. Ngo, 548 U.S. 81, 84 (2006) (explaining that "proper exhaustion of administrative remedies is necessary" to fulfill the Prison Litigation Reform Act's exhaustion requirement); see also 42 U.S.C. § 1997e(a).  However, defendants did not raise the issue of exhaustion in their summary judgment motion or subsequent briefs, although they did mention it in their answer to Mikell's complaint.  As defendants have the "burden of proving the affirmative defense of failure to exhaust remedies," we will address the merits of Mikell's claims against them.  See Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002).

his ability to freely exercise his religion by participating in the Ramadan fast, as protected by the First Amendment. Mikell voluntarily dismissed his claims against three defendants; his claims against four defendants proceeded to summary judgment. Those defendants — Sibanda, Muhammad, Dittsworth, and another Food Service Supervisor, Michael DeCarlo — moved for summary judgment on Mikell's remaining claims against them. Mikell also moved for summary judgment. The District Court granted defendants' motion and denied Mikell's. Mikell timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment; thus, we apply the same standard as the district court. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party. Id. at 255. However, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016). A mere "scintilla

5

of evidence" in support of the non-moving party does not create a genuine issue of material fact. Anderson, 477 U.S. at 252.

III.

Individuals who are incarcerated "retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citation omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). When an inmate challenges a prison regulation that infringes upon his constitutional rights, courts apply a four-factor analysis set out in Turner v. Safley, 482 U.S. 78, 89-91 (1987).

Although Mikell cited several prison policies in his summary judgment motion relating to food services and religious activities at SCI-Greene, he does not argue that any policy or practice infringed on his right to freely exercise his religion. Rather, he claims that defendants individually and personally infringed upon his free exercise rights when they failed to provide meals compatible with his participation in the Ramadan fast despite the procedures that he had followed. On the record before us, Mikell has failed to sufficiently link any defendant to his failure to receive meals to participate in the 2012 Ramadan fast.

"A defendant in a civil rights action must have personal involvement in the alleged

6

wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff may establish personal involvement by demonstrating "personal direction or . . . actual knowledge and acquiescence," which must be shown "with appropriate particularity." Id.

First, regarding Food Service Supervisors DeCarlo and Dittsworth, Mikell has not shown that they interfered with his Ramadan fast participation. He makes no specific allegations regarding any interaction he may have had with DeCarlo. Mikell's only interaction with Dittsworth occurred immediately after he was transferred to SCI-Greene and submitted a request form to a Food Services Supervisor indicating his intent to participate in the Ramadan fast. After Dittsworth informed Mikell that he needed to contact the Chaplaincy Department in order to participate in the fast, Mikell did not communicate with Dittsworth further to inform him that he was not receiving meals despite his placement on the participation list. Because there is no evidence that either DeCarlo or Dittsworth ever knew that Mikell had not received meals to observe the fast or that either defendant was personally involved in his meal delivery, summary judgment was properly granted in their favor.

Next, Mikell's claim against Muhammad lacks merit. At most, Mikell alleges that he informed Muhammad that he had not received meals to observe the fast soon after his transfer and that Muhammad responded that if he were on the list, he should begin receiving meals to participate. There is no evidence that Mikell followed up with Muhammad to inform him that he had not begun receiving the meals despite his

7

placement on the participation list. As Mikell does not indicate how Muhammad specifically interfered with the free exercise of his religion, Muhammad was also entitled to summary judgment.

Finally, Mikell's claim against Sibanda cannot survive summary judgment. Mikell claims that Sibanda personally confirmed that he was on the participation list and informed him that he would immediately begin to receive meals to observe the fast. It is undisputed that Mikell was on the list and that he nonetheless never received the requested meals. However, there is no evidence that Mikell communicated with Sibanda after the alleged cell visit for the rest of Ramadan or otherwise informed Sibanda of the problem. Sibanda did respond to the grievance that Mikell submitted in August 2012, but the grievance was not directed at Sibanda and made no mention of him. Further, it was only received by the prison three days before Ramadan ended; there is no evidence that Sibanda knew of the grievance before the end of Ramadan. Although Mikell expected Sibanda to take some unidentified additional action to ensure that he could fast, he waited weeks until Ramadan was nearly over before bringing the discrepancy to anyone's attention, while accepting his regularly scheduled meals three times a day.

By some still-unknown occurrence, Mikell continued to receive his regularly scheduled meals despite his placement on the Ramadan participation list, but there is no evidence that Sibanda was involved beyond overseeing Mikell's undisputed placement on the list. Mikell has not shown that Sibanda knowingly or intentionally interfered with his

8

free exercise of his religion.  Cf. Lovelace v. Lee, 472 F.3d 174, 219 (4th Cir. 2006) (holding that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause" because a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983"). Thus, the District Court properly granted summary judgment to Sibanda.