**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1544
_____

SHERRY MOORE,
                           Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 1-13-cv-06614)
District Judge:  Honorable Noel L. Hillman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 1, 2017
Before:  JORDAN, RESTREPO, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 4, 2017)
_____

OPINION[*]
_____

PER CURIAM

        Plaintiff Sherry Moore, proceeding pro se, appeals the District Court's grant of

summary judgment for defendant, the Secretary of the Department of Homeland Security

("DHS").  Moore alleges race discrimination and retaliation under Title VII of the Civil

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Rights Act of 1964, 42 U.S.C. § 2000e et seq. For the reasons that follow, we will affirm the District Court's decision.

I.

Moore is an African-American woman. During the period relevant to this lawsuit, she served as an Immigration Enforcement Agent for DHS in Immigration and Customs Enforcement in Marlton, New Jersey. Moore filed a complaint of discrimination against two of her supervisors, Adam Garcia and Christopher Croteau, in 2004. She claims that she was subjected to discrimination and retaliation after she did so.

Moore's claims are based on four work assignments she received; her account of them follows. First, in either March or May 2006, Croteau directed Moore and another agent to release a detainee after hours to the detainee's home in Camden, New Jersey. Moore and the other agent drove to the home in a white van with a government license plate. Both agents were armed. When they arrived, a number of people were present outside of the home who were angry because of a raid conducted earlier that day in which the detainee had been arrested. The group yelled at Moore and the other agent while they were releasing the detainee. The home was in an area known for high gang, drug, and criminal activity.

No law enforcement officers were notified that they were coming or called in for backup, as was the usual policy. Both Moore and the other agent described the situation as dangerous given the earlier arrest and the high-crime area where the detainee lived. No one came physically close to either agent, however, and the agents left after the

2

detainee was released. Croteau went to the former detainee's home the following day with two other agents to complete her release paperwork. Moore believes this assignment was discriminatory because "Croteau made the conscious decision to send two female African-American [agents] alone into a city that is well-known for violence." Supp. App'x at SA309.

Croteau avers that he made a decision to return the detainee to her home that evening because she was breastfeeding a six or seven month old baby and had not been home in twelve hours. Croteau described her as distraught and crying profusely about her baby. He testified that he had never before or since had a situation where officers had arrested a woman who was still breastfeeding. He described it as "the most unique case [he'd] had to date." See id. at SA301 at 26:6-7. He stated that he had "waived all normal paperwork for release in an effort to accelerate [the] ability to get the mother back . . . with the [baby] to be fed." Id. at SA318.

Croteau stated that he asked Moore and the other agent to release the detainee because they were the first two people he saw after visiting the detainee, they were experienced and compassionate officers with years of experience, and it was most appropriate for female officers to transport the female detainee in what he identified as an urgent situation. He added that he treated the situation as urgent because although he was aware that the detainee was supplementing breastfeeding with formula, as a parent he believed that the baby would prefer to be breastfed.

3

In May 2006, Moore conducted surveillance on an individual in Camden, New Jersey on three occasions. She maintains that Croteau directed her immediate supervisor to assign her to this task. She had previously placed an ankle bracelet on the individual and was told to monitor his activity in case he violated the conditions of the ankle bracelet program. She was paired with at least one other agent on each surveillance trip.

On the third trip, Moore and two other agents went to conduct surveillance in a white government van which was identifiable by its DHS license plates. According to Moore, she and the other agents left soon after arriving at the surveillance location because when they arrived, residents of Camden pointed at the government vehicle because they knew that they were immigration agents. Another agent who was present for this last operation recounted leaving because all three agents decided that it would not be safe to go into the intended building.

Croteau testified in a deposition that there was an "alternatives to detention" program in place at the time where certain individuals were fitted with ankle bracelets and, as part of their participation in the program, agents would supervise them to ensure that they were home and complying with all program requirements. Croteau testified that an agent named Aaron Bolden was the contact person for this program; he was with Moore on the first two of the three visits.

Moore contends that after-hours assignments to Camden were only given to the African-American women in her workplace. Another African-American woman agent

4

stated that she believed that other agents besides her and Moore "were given preferential treatment." Supp. App'x at SA271.

Finally, Moore provides allegations about a number of other incidents as background information.[1] See id. at SA141. Her annual performance rating was lowered from "outstanding" to "excellent" in April 2004 and then changed to "fully successful" in November 2007. She was suspended for 5 days in December 2004. Sometime before 2005, a junior agent was selected to attend a training and she was not. She was sent on two dangerous escort assignments to Senegal in 2005. Between September 2006 and May 2007, Moore was "not placed on the 'CAP' team." Id. In December 2006, Moore was assigned to a certain detail for only sixty days while another agent was assigned to the same detail for ninety days and then promoted. In 2008, two agents who were junior to Moore were selected for an intelligence training but she was not.

Moore filed a class complaint of employment discrimination with DHS in October 2006 alleging race discrimination and retaliation for her 2004 discrimination complaint. In May 2008, two of her allegations were accepted for investigation by DHS. She did not appeal the denial of numerous other allegations for investigation. In July 2013, an Equal Employment Opportunity Commission administrative judge issued a decision finding that Moore had failed to establish discrimination or retaliation. On July 26, 2013, the DHS

---

[1] Moore made a few other allegations of discriminatory incidents in her amended complaint. However, those allegations have no support in the record on summary judgment. Moore has not referenced them on appeal and did not raise them in opposition to defendant's summary judgment motion in the District Court.

Office for Civil Rights and Civil Liberties issued a final order implementing the administrative judge's decision in full.

On October 31, 2013, Moore filed a complaint in the District Court. She later obtained counsel and amended her complaint. Defendant moved for summary judgment, and the District Court granted defendant's motion on February 8, 2017. Moore timely appealed the District Court's decision.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment; thus, we apply the same standard as the district court. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). We will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party. Id. at 255. However, a mere "scintilla of evidence" in support of the non-moving party does not create a genuine issue of material fact. Id. at 252. Additionally, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016).

6

III.

Moore argues on appeal that the District Court improperly granted summary judgment in favor of defendant on her Title VII discrimination and retaliation claims.[2] The District Court first discussed several issues with the administrative exhaustion of Moore's claims but decided the case on the merits. Supp. App'x at SA372-74. The District Court concluded that even if Moore had properly exhausted her claims, she was unable to show that there existed a genuine issue of material fact that she had faced discrimination or retaliation by her employer. Id. at SA373-74. The District Court held that Moore could not show that she had suffered an adverse employment action. Id. at SA376-81. Additionally, the District Court concluded that she could not show that defendant's reasons for assigning her to four tasks in Camden were pretext for discrimination or retaliation. Id. at SA381-83.

---

[2] In the District Court, Moore argued in one sentence in her brief opposing summary judgment that she had put forward sufficient evidence to establish a Title VII hostile work environment claim. See Supp. App'x at SA227. The District Court did not address this issue. Although Moore is proceeding pro se on appeal, her brief is well-written and she clearly presents her issues with the District Court's opinion. She focuses her argument on the four discrete assignments in Camden rather than any pattern of racially discriminatory harassment in the workplace to support her discrimination claim. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, . . . Title VII is violated.") (internal citations omitted). We note that Moore has made no showing of "severe or pervasive" racially discriminatory intimidation or harassment in her workplace on this record. However, because Moore does not raise this issue on appeal and the District Court did not rule on it in the first instance, we need not address it.

To prevail on a Title VII claim of discrimination or retaliation, a plaintiff must first establish a prima facie case. A prima facie case of race discrimination requires a plaintiff to establish that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A prima facie case of retaliation requires a plaintiff to establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

If a plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the defendant to articulate a legitimate non-discriminatory or non-retaliatory reason for its conduct. See McDonnell Douglas, 411 U.S. at 802; Moore, 461 F.3d at 342. If the defendant can meet this standard, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination or retaliation. See McDonnell Douglas, 411 U.S. at 804; Moore, 461 F.3d at 342.

We will assume, without deciding, that Moore's discrimination and retaliation claims were properly exhausted[3] and that she can establish a prima facie case for both claims. However, Moore cannot show that defendant's proffered reasons for assigning her to Camden were pretext for either discrimination or retaliation. To show pretext in the discrimination context, Moore must point to evidence that (1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;" or (2) permits a "factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." See Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

Croteau, who Moore claims directed her to perform each of her Camden assignments, testified in a deposition that the detainee release assignment was both unique and urgent. He stated that had never before or since had an actively breastfeeding mother in custody without her baby, which led him to waive the usual paperwork requirements to get her home quickly. He asserted that he chose Moore and the other agent based on his assessment that it was most appropriate for female agents to return the female detainee, as soon as possible, and because they were experienced and compassionate agents. Although he acknowledged that the detainee had been supplementing breastfeeding with formula feedings, he also testified that as a parent, he

_____

[3] Federal employees must properly exhaust their administrative remedies against their employers before they can file a Title VII suit in federal court. See 42 U.S.C. § 2000e-16(c).

believed that the baby would prefer to be breastfed, which is why he acted swiftly to have her returned home after twelve hours away.

As for the three surveillance assignments, Croteau stated that an "alternatives to detention" program existed at the time where individuals eligible for ankle bracelet monitoring would be fitted with a bracelet and supervised by agents to ensure that they were complying with program requirements. Croteau testified that the agent who was with Moore on two of her three surveillance assignments was the contact person for that program.

Moore argues that there was no legitimate business purpose for any of these assignments because Croteau violated certain office policies when he made them. She claims that "[t]here was no starving baby," that the detainee's baby was on formula, and that thus the detainee did not need to be directly returned to her home. Appellant's Br. at 7. Although she acknowledges that an agent's job is dangerous, she argues that this assignment was unnecessarily dangerous and therefore discriminatory or retaliatory. Id. at 8. She does not address why the surveillance assignments were pretext for either discrimination or retaliation, either in her appellate brief or in her arguments before the District Court. See id. at 7-11; Supp. App'x at SA227-230. She therefore only specifically argues that the reasons given for her assignment to return the breastfeeding detainee to her home in Camden were pretext for discrimination.

Both Moore and Croteau have testified that the detainee release was an extraordinary situation. However, there is no evidence in the record that this assignment

10

was beyond the scope of Moore's job duties as an agent. As Moore admits, her job description required her to "regularly enter[] hostile situations" and face exposure to "life threatening situations," sometimes "far from assistance." Supp. App'x at SA207, 210.

The record also fails to indicate that the detainee was not actually breastfeeding her baby. Moore's insistence that she was not exclusively breastfeeding is insufficient to establish that Croteau fabricated a potentially dangerous assignment to discriminate against Moore. There is no other evidence that challenges Croteau's assessment that the detainee urgently needed to be returned home, based on his conversation with her. Further, there is no evidence that any similarly situated agents were available to release the detainee that evening, besides the agent who did accompany Moore. See Fuentes, 32 F.3d at 765 (stating that a plaintiff can show pretext by establishing "that the employer treated other, similarly situated persons not of his protected class more favorably").

Although Moore contends that Croteau violated office policy in making this assignment, the question before us is not whether Croteau's decision was in keeping with policy; the question is whether there is sufficient evidence in the record to show that his decision was motivated by racially discriminatory animus. See id. ("To discredit [an] employer's proffered reason . . . [a] plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). On this record, a factfinder would be unable to

11

conclude that racially discriminatory animus against Moore motivated the detainee release assignment.[4]

As for Moore's retaliation claim, a plaintiff claiming Title VII retaliation must ultimately prove that her protected activity was a but-for cause of the adverse action taken against her. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). It would be impossible for Moore to establish but-for causation here. Two years passed between her 2004 complaint of discrimination and the 2006 Camden assignments. Even if we accepted all of the events she lists as "background" as supported by the record, those unrelated incidents do not sufficiently connect her protected activity to the Camden assignments as a but-for cause. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007) ("Where the temporal proximity between the protected activity and the adverse action is . . . . not 'unusually suggestive,' we ask whether 'the

---

[4] In her appellate brief, Moore makes a number of new allegations that were never raised in the District Court. See Appellant's Br. at 5-7. All of them allegedly occurred well before the District Court issued its opinion. Moore states that she attempted to present her attorney with affidavits from other DHS agents supporting some of her allegations and that "it would be unfair to be punished for [her] lawyer's refusal to provide the court with evidence [she] gave him." Id. at 8 n.3. However, a litigant is bound by her lawyer's decisions. See Link v. Wabash R. Co., 370 U.S. 626, 634, 634 n.10 (1962) (holding that a "party is deemed bound by the acts of his lawyer-agent" and noting that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice").

We cannot consider evidence raised for the first time on appeal. See In re Application of Adan, 437 F.3d 381, 388 n.3 (3d Cir. 2006) ("[W]e will not consider new evidence on appeal absent extraordinary circumstances, such as those that render the case moot or alter the appropriateness of injunctive relief, a change in pertinent law, or facts of which a court may take judicial notice."). Moore has not presented any extraordinary circumstance that would lead us to consider any additional evidence, let alone several unsubstantiated allegations, for the first time on appeal.

proffered evidence, looked at as a whole, may suffice to raise the inference.'") (internal citations omitted). Accordingly, the District Court properly granted summary judgment for defendant on Moore's Title VII retaliation and discrimination claims.