**CLD-131**                                                              **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3265
_____

ROGER ALLEN JOHNSON,
Appellant

v.

EMELIA CAPUTO; DR. VICTORIA GRESSNER; DEBORAH WILSON;
PRIME CARE MEDICAL, INC.; JASON ROSATI, Lt.; ROBERT MEYERS;
MICHAEL BATEMAN; JOHN ROBINSON; CHRIS NAUGLE; NORTHAMPTON
COUNTY PRISON
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil No. 5-11-cv-02603)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 22, 2018

Before:  CHAGARES, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 11, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Roger Johnson, proceeding in forma pauperis, appeals from the District Court's grant of summary judgment in favor of the five remaining defendants in an action Johnson brought pursuant to 42 U.S.C. § 1983. For the reasons that follow, we will summarily affirm the District Court's judgment.

I.

Because we write primarily for the parties, we will only recite the facts necessary for our discussion; these facts are undisputed unless otherwise noted. On May 5, 2009, Johnson attempted to evade arrest by jumping from a balcony. He fell thirty to forty feet onto a hard surface, sustaining fractures in both of his feet and his lower back. Police escorted Johnson to a local hospital, where he underwent foot surgery. Johnson was discharged to the Northampton County Prison ("NCP") on May 14, 2009. He claims that institutional and medical staff members violated his constitutional rights during his subsequent recovery period at NCP between May 2009 and September 2010.[1]

Specifically, Johnson maintains that defendant Lieutenant Jason Rosati assaulted him on two occasions. Next, he claims that defendants Dr. Victoria Gessner, Dr. Deborah Wilson, and R.N. Emilia Caputo were deliberately indifferent to his serious medical needs in denying him access to adequate pain medication and ambulatory

---

[1] Johnson was briefly released from NCP between February 23, 2010 and March 14, 2010.

assistance equipment.[2] He also generally alleges that they deliberately ignored medical grievances that he submitted and failed to coordinate external medical treatment for him. Finally, he contends that defendant PrimeCare Medical, Inc., a private medical services contractor, failed to properly train and supervise its employees, leading him to receive deficient medical care.[3]

## A. Defendant Rosati

Johnson saw defendant Rosati daily while he was recovering in the medical housing unit between May 2009 and December 2009. According to Johnson's testimony at a 2014 deposition, on June 6, 2009, Rosati entered a common area where Johnson was sitting in a wheelchair watching television with other inmates. Rosati was swinging a collapsible metal baton. When Johnson commented that Rosati was carrying a weapon, Rosati hit his right foot with the baton and told him that that was what a weapon was for. Johnson experienced extreme pain when he was struck. He could not tell if his foot had been injured from being struck. In 2010, Johnson wrote a letter to a prison official about this incident, stating that Rosati struck him lightly, though hard enough to hurt, and that

---

[2] Johnson experienced numerous other medical issues while he was incarcerated; the record of his conditions and treatments is voluminous. For example, Johnson alleges that he experienced an incident of severe abdominal pain in June 2010 and did not receive medical attention for this pain until several hours later. A nurse who is not a party to this litigation examined him after he notified prison officials of his need for medical attention. As Johnson does not allege any defendant's involvement in this incident, we need not discuss it further. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

[3] Johnson does not appeal the District Court's grant of summary judgment for defendants on his negligent infliction of emotional distress claims.

he knew Rosati intended his actions "jokingly."

On August 6, 2009, Johnson was again sitting in a common area in his wheelchair watching television with other inmates when Rosati told him to remove a t-shirt that he was wearing around his head because it was not prison-issued clothing. Johnson removed the t-shirt initially but put it back on when Rosati left. Rosati returned to the common area, grabbed a broom, and hit Johnson in the left shoulder and upper arm with the straw part of the broom. Johnson's arm and shoulder were red and painful for up to half an hour after this incident. It does not appear that Johnson sought medical attention after either incident, and there are no accounts of the witnesses to either event.

B.    Medical Defendants

The majority of Johnson's claims concern the medical care that he received at NCP, specifically his access to pain medication and assistive ambulatory equipment. His NCP medical record indicates that he received pain medication every day that he was incarcerated, except for on February 10, 2010, when he refused his pain medication. Johnson provided conflicting testimony in a deposition about whether or not he had received pain medication on all of these days, particularly immediately after his surgery, but he maintains that his pain medication was frequently insufficient for the level of pain he experienced. He believes that his NCP medical records have been falsified.

Johnson received Percocet while he was in the hospital before his detention at NCP. Dr. Gessner prescribed alternate pain management medication for Johnson when he entered NCP, including Motrin, Tramadol, and Tylenol with codeine. Gessner

4

testified that Johnson was somnolent when she first saw him after his transfer to the facility and she had determined that she could accomplish the same analgesic effect as Percocet with other medications, after assessing Johnson's condition. Dr. Wilson examined Johnson the day after his transfer and did not note any concerns from him about his pain medication regimen.

Johnson repeatedly complained of pain in the first few weeks after he was admitted; staff responded by prescribing additional pain medication or increasing his doses of pain medication. Johnson also submitted a grievance form in which he stated that the pain medication he received immediately after his surgery had been insufficient to manage his pain, causing him to suffer severe pain for weeks. Prison staff received his grievance form on September 4, 2009 and Nurse Caputo responded to it. The medical defendants' expert submitted an opinion that Percocet is generally not used in the correctional setting and that correctional medical providers regularly substitute alternative medications for prescriptions received from external medical providers.

When Johnson arrived at NCP, he was using a wheelchair because he could not bear weight on his feet. In August 2009, his orthopedic surgeon instructed him to begin weight-bearing activity with a walker. In December 2009, several NCP medical staff noted that Johnson was ambulating without the use of his wheelchair. Dr. Gessner discontinued his wheelchair use on December 18, 2009 and issued him a walker instead. Johnson claims that he slipped and fell in the shower while using his walker later that day. He was sent to the hospital for an elbow injury. When Johnson returned to NCP, he

5

was placed on suicide watch due to concerns that he may injure himself.[4]

On December 21, 2009, Johnson was transported to an external physical therapy provider for an evaluation. Dr. Gessner determined on December 23, 2009 that Johnson was ambulating well enough that he no longer needed to use a walker, based on a consultation with his physical therapist. Johnson was prescribed a cane after he requested one in January 2010, and eventually he was able to progress to walking without it most of the time. The medical defendants' expert submitted an opinion that Johnson's wheelchair was discontinued at an appropriate time.

Dr. Gessner cleared Johnson to leave the medical housing unit on December 23, on the condition that he would be transported up and down any steps with a specialized stair transport chair. Johnson believes that he was prematurely transferred out of the medical unit for an incident that occurred earlier in December, where he was issued a misconduct report for acting aggressively and disrespectfully toward staff. Johnson was dissatisfied with the location of his cell and his shower access after his transfer and filed a grievance form directed at PrimeCare; staff responded that PrimeCare had no control over cell assignments.

In April 2011, Johnson filed a complaint against these defendants and numerous others. The District Court dismissed Johnson's claims against the majority of the

---

[4] The shower in the medical housing unit was equipped with accessibility features, including a shower chair. A nurse noted that the shower floor was dry when she arrived to assist Johnson, and that Johnson was wearing slip-resistant shoes.

defendants early in the litigation but allowed him to pursue certain claims against defendants Rosati, Gessner, Wilson, Caputo, and PrimeCare. They moved for summary judgment on Johnson's remaining claims, which the District Court granted by order entered on September 29, 2017. Johnson timely appealed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment; thus, we apply the same standard as the district court. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). We will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party. Id. at 255. However, a mere "scintilla of evidence" in support of the non-moving party does not create a genuine issue of material fact. Id. at 252. Additionally, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016). We may summarily affirm a district court's decision "on any basis supported by the record" if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

The District Court properly granted summary judgment to defendants on all of Johnson's claims. First, Johnson cannot establish an excessive force claim against Rosati. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" that violates "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 (1992). Courts evaluate several factors to determine whether a correctional officer has used excessive force, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) "the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). Thus, courts examine a correctional officer's subjective motive for his or her conduct as well as the objective effect of that conduct.

Assuming Johnson's account of the two incidents to be true, there is no evidence that the use of force was necessary in the first incident and scant evidence that force was necessary in the second. Nevertheless, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. De minimis uses of physical force are "necessarily exclude[d] from constitutional recognition," as long as they are "not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks omitted).

The key inquiry is whether a prison official "maliciously and sadistically use[d] force to cause harm," regardless of whether an inmate suffered a "significant injury." Id. at 9. However, "the extent of injury suffered by an inmate . . . may suggest whether the use of force . . . evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. at 7. Johnson testified that he felt pain on contact but could not identify any injury after the first incident and that his arm was red and painful for up to half an hour after the second incident. In this case, Johnson's de minimis injuries illustrate that the force allegedly utilized was also constitutionally de minimis. See Brooks, 204 F.3d at 108. Further, at least with respect to the first incident, Johnson himself perceived Rosati's actions to be intended "jokingly" rather than "maliciously and sadistically." Considering the Whitley factors, no reasonable jury could find on this record that the force allegedly used by Rosati was "of a sort repugnant to the conscience of mankind" such that Johnson's constitutional rights were violated.[5]

Next, Johnson's claims against all of the medical defendants lack merit. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Establishing a

---

[5] In his argument in support of his appeal, Johnson does not provide any reason that the District Court's entry of summary judgment for Rosati was improper, although he presents numerous arguments for his claims against the other defendants.

claim requires proving both an objective component — "a serious medical need" — and a subjective component — "acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A plaintiff may show deliberate indifference by demonstrating that "there was objective evidence that [the] plaintiff had serious need for medical care . . . and prison officials ignored that evidence" or where "necessary medical treatment is delayed for non-medical reasons." Id. (internal quotation marks omitted).

"Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017). "[M]ere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment." Id. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id. at 228. However, prison officials may not provide "an easier and less efficacious treatment" of an inmate's medical condition with deliberate indifference to a serious medical need. West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978).

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Johnson may establish personal involvement by demonstrating "personal

10

direction or . . . actual knowledge and acquiescence," which must be shown "with appropriate particularity." See id.

Dr. Gessner was substantially involved with Johnson's recovery from his May 2009 surgeries. She prescribed him medications on numerous occasions and oversaw his transition from using a wheelchair to walking independently. The record demonstrates that whenever Dr. Gessner was notified about Johnson's complaints of pain, she either prescribed additional doses of pain medication or added pain medications to those that he was already taking. Johnson may have disagreed with the specific medications he received, but "[d]eference is given to prison medical authorities in the diagnosis and treatment of patients, and courts 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.'" See Palakovic, 854 F.3d at 227-28, quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Similarly, Dr. Gessner transitioned Johnson from a wheelchair to a walker months after his orthopedic surgeon recommended it, after observing him personally and seeing notes from other medical staff indicating his improved ambulation over time. Johnson's transition off the walker was based on Dr. Gessner's consultation with his physical therapist. Johnson's "mere disagreement as to the proper medical treatment" does not establish a claim of deliberate indifference. See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Johnson does not connect Dr. Gessner to his fall in the shower after he began using the walker; the record contains

11

conflicting evidence about the event, but even under Johnson's account, it was apparently an accident.

Johnson has repeatedly admitted that defendant Wilson had no knowledge of any of his requests for pain medication or for assistive ambulatory equipment. Caputo's only relevant connection to his claims involves her response to the grievance Johnson filed in September 2009 about the pain medication he received in May and June 2009. Caputo's response to his complaint does not demonstrate her actual knowledge of his pain at the time that he was experiencing it. Johnson cannot show that Caputo possessed the requisite personal involvement in the provision of his pain medication in May and June 2009.

Finally, Johnson's generalized allegation that defendants Gessner, Wilson, and Caputo ignored his medical grievances or failed to schedule outside medical appointments has no support in the record. On the contrary, the record demonstrates that Johnson received consistent and attentive medical care from both NCP medical providers and external medical providers.[6]

Johnson's remaining claim is against PrimeCare for failure to train and supervise

---

[6] In both the District Court and this appeal, Johnson has argued that his medical records were somehow falsified "in an elaborate cover-up scheme." See Appellant's Argument in Support of Appeal at ECF p. 5. Johnson has admitted that he has no way of proving this alleged falsification. More importantly, he does not explain how it is relevant to his claims against these defendants. Even if the record contains discrepancies, those discrepancies do not demonstrate how any defendant was deliberately indifferent to Johnson's serious medical needs.

its employees. Johnson can only hold PrimeCare liable for his alleged constitutional violations if he can "provide evidence that there was a relevant [PrimeCare] policy or custom" that "caused the constitutional violation[s]." See Natale, 318 F.3d at 583-84. Johnson has not identified any such policy or custom. He has not explained what training or supervision PrimeCare failed to provide. His only argument relies on his unsupported belief that defendants intentionally falsified his records to justify the medical diagnoses and care that he received. Such conclusory allegations are insufficient to survive summary judgment. See Ramara, 814 F.3d at 666. We will therefore affirm the District Court's grant of summary judgment in favor of all defendants.