**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3313
_____

SHARON J. RHODEN,
                              Appellant

v.

CHILDRENS HOSPITAL OF PITTSBURGH OF THE UPMC HEALTH SYSTEM
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2-14-cv-00411)
District Judge: Honorable David S. Cercone

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 12, 2018
Before:  JORDAN, RESTREPO and SCIRICA, Circuit Judges

(Opinion filed: October 17, 2018)
_____

OPINION[*]
_____

PER CURIAM

        Pro se appellant Sharon Rhoden appeals the District Court's grant of summary

judgment for defendant, Children's Hospital of Pittsburgh of the UPMC Health System

("Children's Hospital").  Rhoden alleges race and national origin discrimination and

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as related state law claims. For the reasons that follow, we will affirm the District Court's decision.

I.

Because we write primarily for the benefit of the parties, we will recite only the facts necessary for our discussion; these facts are undisputed unless otherwise noted. Rhoden is a black woman who was born in Jamaica. She worked as a pharmacist at Children's Hospital from 1990 until 2013.

Between 2010 and 2013, Rhoden received progressive disciplinary warnings under Children's Hospital's disciplinary policy, ultimately ending in her termination. She first received a verbal warning in May 2010 for using disparaging language toward an employee when she nominated a different employee for a service award. Rhoden claims that she had not intended to disparage any specific employees in her nomination.

In May 2012, Rhoden had a verbal altercation with a co-worker about the length of time she was going to be away from her station for a restroom break. This incident was witnessed by several employees who provided written accounts describing Rhoden's behavior as overly loud, unprofessional, and rude; Rhoden maintains that she did not act that way. That same month, a pharmacist emailed all of the pharmacy staff highlighting an issue from the previous shift, without specifying Rhoden. Rhoden sent an email responding to both the pharmacist and the entire pharmacy team defending her work from the previous shift and accusing the other pharmacist of having not completed her own

2

work. As a result of these two incidents, Rhoden received a written warning in June 2012. In October 2012, Rhoden filed a complaint with the Equal Employment Opportunity Commission ("EEOC") based on these two disciplinary incidents; the EEOC issued Rhoden a Notice of Right to Sue in January 2014.

Rhoden received a final written warning in August 2013 after she was observed speaking on her personal cell phone at work for over twenty minutes. Her phone call was considered a violation of the office cell phone policy because she did not notify any member of the pharmacy leadership that she needed to make a call and she did not leave the pharmacy dispensing area for the duration of the call.

In October 2013, both Rhoden and a white pharmacist, Tamara Wurst, were terminated after they refused to take a call from the hospital's Pediatric Intensive Care Unit, in violation of hospital policy. They both stated that the other person should have picked up the call; in the end, another pharmacist handled the call after the caller had been on hold for several minutes. Rhoden claims that although she was not on the phone at the time the call came in, she was too occupied with other tasks from previous calls to take the incoming call. She maintained that her supervisor had told her that it was appropriate to ask another pharmacist to take an incoming call if she had a backlog of other tasks.

Rhoden, through counsel, filed a complaint in the District Court in March 2014.

3

She alleged race and national origin discrimination and retaliation claims.[1]  In May 2014,

she filed a charge of discrimination based on her termination with the EEOC; it was

ultimately dismissed in October 2014.  After the parties completed discovery, Children's

Hospital moved for summary judgment, which the District Court granted.  Rhoden timely

appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise

plenary review over a district court's grant of summary judgment.  Blunt v. Lower

Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  Summary judgment is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

In evaluating a motion for summary judgment, "all justifiable inferences are to be

drawn in . . . favor" of the nonmoving party.  Id. at 255.  However, a mere "scintilla of

evidence" in support of the nonmoving party does not create a genuine issue of material

fact.  Id. at 252.  Further, "the non-movant may not rest on speculation and conjecture in

---

[1]  Rhoden also initially alleged that she was terminated because of age discrimination and retaliated against for opposing age discrimination.  Rhoden withdrew these claims in her brief opposing Children's Hospital's motion for summary judgment.  She has not raised either of her age-related claims on appeal.

4

opposing a motion for summary judgment." <u>Ramara, Inc. v. Westfield Ins. Co.</u>, 814 F.3d 660, 666 (3d Cir. 2016).

III.

Rhoden argues that the District Court improperly granted summary judgment in favor of Children's Hospital on her Title VII discrimination and retaliation claims, as well as her related state law claims.[2] The District Court concluded that Rhoden could not show that the reason given for her termination was pretext for discrimination. The District Court also determined that she could not demonstrate a causal connection between her filing of an EEOC charge and her termination such that she could state a retaliation claim.

To prevail on a Title VII claim of discrimination or retaliation, a plaintiff must first establish a prima facie case. A prima facie case of race or national origin discrimination requires a plaintiff to establish that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993); <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). A prima facie

---

[2] Because Rhoden's state law claims under the Pennsylvania Human Relations Act "are interpreted coextensively with Title VII claims" under the circumstances of this case, we will not address them separately. <u>See</u> <u>Atkinson v. LaFayette Coll.</u>, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

case of retaliation requires a plaintiff to establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

If a plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the defendant to articulate a legitimate non-discriminatory or non-retaliatory reason for its conduct. See McDonnell Douglas, 411 U.S. at 802; Moore, 461 F.3d at 342. If the defendant can meet this standard, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination or retaliation. See McDonnell Douglas, 411 U.S. at 804; Moore, 461 F.3d at 342.

We will assume, without deciding, that Rhoden can establish a prima facie case of race and national origin discrimination. However, Rhoden cannot show that the reason given for her termination was pretext for discrimination. To show pretext, Rhoden must point to evidence that (1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or (2) permits a "factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." See Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

Children's Hospital's stated reason for terminating Rhoden was that after she had

6

reached the final warning level in its progressive discipline policy, Rhoden refused to answer an incoming phone call from the Pediatric Intensive Care Unit. A white pharmacist who also had a disciplinary history, Wurst, was terminated for refusing to take that same phone call. Rhoden vaguely argues that Wurst was somehow treated more favorably after the phone call incident, but nothing in the record indicates "that the employer treated other, similarly situated persons not of [her] protected class more favorably." See Fuentes, 32 F.3d at 765. Rhoden and Wurst were treated similarly based on their handling of this call when they were both terminated for the same behavior.

Rhoden also maintains that her supervisor had told her to defer phone calls to other pharmacists when she had a backlog of work from other calls; she claims that she was merely following this instruction and that she could not have been expected to act differently. However, "[t]o discredit [an] employer's proffered reason [for an adverse action,] . . . [a] plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. Rhoden does not dispute that she did not accept the call. Her explanation for declining to take the call would not allow a factfinder to conclude that the reason for her termination was either a fabrication or that it was motivated by discriminatory animus, even if her employer made a "wrong or mistaken" decision.

Rhoden's retaliation claim fails at the prima facie stage, as she cannot show a causal link between her filing of an EEOC complaint in October 2012 and her

7

termination in October 2013.[3] A plaintiff asserting a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). A plaintiff can make this showing "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity 'unusually suggestive of retaliatory motive.'" Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (internal citations omitted). Other "proffered evidence, looked at as a whole, may [also] suffice to raise the inference" of an employer's retaliatory motive. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). Here, the year that passed between Rhoden's filing of an EEOC complaint and her termination is not "unusually suggestive of retaliatory motive." See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months is insufficient alone to be "unduly suggestive" of retaliation). Rhoden has not presented any other evidence that suggests that her employer terminated her in October 2013 in retaliation for her filing of an EEOC complaint in October 2012. Accordingly, the District Court properly granted

---

[3] In the District Court, Rhoden also claimed that she had engaged in protected activity when she expressed written dissatisfaction with certain feedback on a performance evaluation from June 2013 and with the discipline she received in August 2013 for making a personal cell phone call. However, in neither of these incidents did Rhoden state that she felt she was being treated unfairly due to her race or national origin, or any other protected status. Thus, these actions cannot be construed as protected conduct for purposes of her retaliation claim. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII.").

8

summary judgment for Children's Hospital on Rhoden's discrimination and retaliation claims.[4]

---

[4] Rhoden's complaints about her counsel's handling of her case do not affect the outcome of this appeal, as she "is deemed bound by the acts of [her] lawyer." See Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962). Her additional concerns about the speed with which the District Court ultimately decided her case have no bearing on the merits of her claims; further, several significant delays in the case were triggered by her own requests or requests to which she consented.