dure authorized by Congress is to be used only by a district court.

Accordingly, the submissions are dismissed, without prejudice to whatever judicial remedies any affected parties may have.

Richard Ira ROMER; Jennifer Glatzer, as Custodian for Adam Glatzer, under the New York Uniform Gift to Minors Act; Anita Margulis; Sylvia Elan; Rae Kornreich; Peter Cordaro; Bruce Paul; Diane A. Levy; Ruth Fretts, Plaintiffs–Appellees,

v.

GREEN POINT SAVINGS BANK; Innis O'Rourke, Jr.; Bernard S. Berman; Charles L. Neumeyer; Wilfred O. Uhl; Robert M. McLane; Dan F. Huebner; Robert P. Quinn; Robert F. Vizza; William M. Jackson; Jules Zimmerman; Charles B. McQuade; Alvin N. Puryear; Thomas S. Johnson, Defendants–Appellants,

Adams Cohen Securities, Inc.; R.P. Financial, Inc., Defendants,

Derrick D. Cephas, Superintendent of Banks of the State of New York, Amicus Curiae.

No. 94–7104.

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1994.

Decided Jan. 28, 1994.

Opinion Filed June 14, 1994.

Douglas S. Liebhafsky, New York City (Wachtell, Lipton, Rosen & Katz, Robert B. Mazur, Marc Wolinsky, Jeffrey M. Wintner, of counsel), for defendant-appellant The Green Point Sav. Bank.

Bruce H. Schneider, New York City (Stroock & Stroock & Lavan, Edward P. Grosz, of counsel), for defendant Adams Cohen Securities, Inc.

Melvyn I. Weiss, New York City (Milberg Weiss Bershad Patricia M. Hynes, Robert P. Sugarman, Barry A. Weprin, of counsel; Pomerantz Levy Haudek Block & Grossman, Stanley M. Grossman, D. Brian Hufford, of counsel; Kaufman Malchman Kirby & Squire, Jeffrey Squire, Daniel Robbins, of counsel; Wolf Popper Ross Wolf & Jones, Marian Rosner, Laurence Paskowitz, of counsel; Rabin & Garland, Joseph Garland,

Marvin L. Frank, of counsel; Jaroslawicz & Jaros, David Jaroslawicz, of counsel; Berman DeValerio & Pease, Glen DeValerio, of counsel; Law Offices of Joseph H. Weiss, Joseph H. Weiss, of counsel; Stull, Stull & Brody, Mark Levine, of counsel), for plaintiffs-appellees.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Bonnie Kayatta–Steingart, Janice MacAvoy, of counsel), on the brief, for amicus curiae Derrick D. Cephas, Superintendent of Banks of the State of New York.

Douglas Spertoli, Richmond, VA (LaClar & Ryan, of counsel), for defendant R.P. Financial, Inc.

Before: PRATT, WALKER and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This motion and appeal concerns a temporary restraining order issued by the district court barring the consummation of a conversion plan, converting a mutual savings bank into a public stock company. The Green Point Savings Bank ("Green Point") is a mutual savings bank chartered under the laws of New York. Early in 1993 Green Point's board of trustees began considering alternate forms of corporate structure. In April the board retained the services of various consultants, including Adams Cohen Securities, Inc., to assist it in formulating and executing a conversion plan. On May 13, 1993, the board adopted a plan to convert to a capital stock bank (the "Plan"). The board then retained R.P. Financial, Inc., an appraisal firm, to determine the market value of the bank.

The crucial component of the conversion plan was a stock offering. As part of the plan, eligible Green Point depositors—those with $100 or more on deposit in accounts at Green Point as of February 28, 1993—would receive subscription rights to purchase shares of common stock at the initial offering price.

Under New York's banking laws, such conversions must be approved by the Superintendent of Banks of the State of New York ("Superintendent"). See N.Y.Comp.Codes R. & Regs. tit. 3, § 86.4(a)(1). Green Point

submitted its conversion plan to the Superintendent on September 13, 1993. The Superintendent approved the plan on November 4, 1993, whereupon Green Point began mailing proxy materials for a December 10 depositors' meeting at which approval for the Plan would be sought.

Republic New York Corporation ("Republic"), a bank holding company, in the meantime had proposed to acquire Green Point and was rejected by Green Point's board of trustees. On November 4, Republic publicly issued a merger proposal, which Green Point again rejected. The maneuverings between the two drew public attention to the details of Green Point's conversion plan.

On November 12, 1993, a group of Green Point depositors ("Plaintiffs") filed a class action in the Eastern District of New York against Green Point, members of Green Point's board of trustees, Adams Cohen Securities, and R.P. Financial (collectively the "Defendants"), alleging that the Defendants had conspired to deter them from exercising their subscription rights, asserting violations of § 10(b) of the Securities Exchange Act of 1934, see 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, see 17 C.F.R. § 240.10b–5. The complaint alleged that Green Point had made materially false and misleading statements in order "to induce depositors to vote for the Proposed Conversion but to forego their right to purchase shares of [Green Point] common stock." The complaint claimed further that the Defendants had breached their fiduciary duties.

Central to the complaint was the allegation that the officers and trustees of Green Point had structured the conversion, not for the benefit of the depositors, but to enrich themselves by providing for their acquisition of undervalued Green Point shares not purchased by the depositors. The complaint alleged that the proxy materials failed to disclose the enormous value to these insiders of their stock acquisition rights.

The Superintendent meanwhile directed that Green Point supplement its proxy materials to include disclosures of the stock benefits to be received by insiders in the conversion and information about the Republic of-

fer. In compliance, Green Point mailed supplementary materials on November 26, 1993.

On December 6, 1993, the Superintendent launched a special investigation of the plan. See N.Y. Banking Law § 36(5) (McKinney 1990). As stated by the Superintendent, the purposes of the special investigation were "to ensure that the Trustees of Green Point properly valued the Bank in its sale to the public, that the depositors obtained adequate disclosure with respect to the conversion and that the solicitation process was conducted in a manner that was fair to the depositors." In the Matter of The Green Point Savings Bank, No. I–8182, at 2 (N.Y.S. Banking Superintendent, Jan. 23, 1994).

The Plaintiffs meanwhile moved in the district court for a preliminary injunction that would bar the holding of the depositors' meeting to vote on the Plan. In an order dated December 9, 1993, the district court denied the motion, holding that no "irreparable harm will result if the conversion vote goes forward at the December 10, 1993, meeting" in light of the Superintendent's pending investigation of "the very charges which are the basis of plaintiffs' Motion for a Preliminary Injunction." Romer v. The Green Point Savings Bank, No. 93 Civ. 5101, slip op. at 10 (E.D.N.Y. Dec. 9, 1993). The district court noted that the Superintendent planned to "void the results" of the depositors' meeting if he determined after his investigation that such action was appropriate.

To effectuate such a conversion, New York law requires an affirmative vote of at least 75 percent of the "aggregate dollar amount of the book value of deposits or shares." N.Y. Banking Law § 9019 (McKinney 1994 Supp.); see N.Y.Comp.Codes R. & Regs. tit. 3, § 86.-4(a)(4). Green Point obtained the necessary vote at the December 10 meeting. By the end of the depositors' subscription period on December 15, about 10,700 of the 246,000 depositors had subscribed to purchase approximately $835 million worth of stock.

Green Point was not free to carry out the sales to its subscribers under the Plan until the Superintendent approved an "amended organization certificate" and filed it with his office and with the county clerk. Id. § 86.-4(c). Under applicable New York law, however, Green Point was required to complete

these sales within 45 days from the end of the subscription period unless the deadline was extended by the Superintendent. *Id.* §§ 86.5(e), (g). The sale-deadline date was thus January 29, 1994. After that date, even if an extension had been granted, subscribers would be free to retract or amend their subscriptions. *Id.* §86.5(g)(2). Accordingly, if the sales were not concluded by January 29, Green Point would be required to issue a new prospectus, and depositors would be entitled to decide anew whether to subscribe and for how much stock.

The Superintendent concluded his investigation on January 23, 1994, and required modification of the conversion plan in several respects; the most significant change eliminated the compensation packages that had been arranged for Green Point executives and trustees and precluded the insiders from acquiring Green Point shares in the conversion and for a substantial time thereafter. This order, together with the supplementary mailing earlier ordered by the Superintendent, cured the principal defects attacked by Plaintiffs in the federal complaint. The Superintendent found that Green Point's plan of conversion, as modified, was in the "best interests" of the bank and its depositors and therefore approved the consummation of the modified plan. *In the Matter of The Green Point Savings Bank,* No. I–8182, at 20.

The day after the Superintendent issued his opinion, the Plaintiffs sought a temporary restraining order ("TRO") in the New York Supreme Court to prevent the Superintendent from filing Green Point's restated organization certificate. In a decision dated January 25, 1994, the state court rejected their claims and refused to grant the temporary restraining order. *Schembri v. Cephas,* No. 100495/94 (Sup.Ct.N.Y.County Jan. 25, 1994).

Plaintiffs then sought a TRO in this action barring the conversion. On January 26, 1994, the district court granted the motion and issued an order barring Green Point from taking further action to accomplish the conversion, pending a preliminary-injunction hearing scheduled for February 3, 1994.

The next day, January 27, 1994, Defendants appealed and moved in this court to stay the district court's restraining order and to expedite the appeal. On January 28 we heard the matter as an emergency. We granted Green Point's motion, expedited the appeal and vacated the district court's restraining order, noting that a formal opinion would follow. This is that opinion.

## DISCUSSION

■ As a preliminary matter we note that the district court's order, although in the form of a TRO, had the effect of a final permanent injunction. By restraining all activity on the conversion until at least February 3, 1994, making it impossible for Green Point to meet the 45–day sale-date, the district court's order would have prevented Green Point's conversion plan from taking effect within the time allowed by law. After the January 29 sale-date, depositors who had subscribed to buy shares in the conversion would be released from their commitments, and any conversion would need to begin with a resolicitation. Thus the district court's order had a far more drastic effect than is normal for a TRO. It effectively granted the Plaintiffs final victory in the litigation.

■ As a general matter, appeal lies only from final judgments of the district court, 28 U.S.C. § 1291, or interlocutory orders that grant or refuse injunctions. 28 U.S.C. § 1292(a)(1). As a TRO is interlocutory and is not technically an injunction, it is ordinarily not appealable. *See Hoh v. Pepsico, Inc.,* 491 F.2d 556, 560 (2d Cir.1974). However, when a grant or denial of a TRO "might have a 'serious, perhaps irreparable, consequence,' and ... can be 'effectually challenged' only by immediate appeal," we may exercise appellate jurisdiction. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996–97, 67 L.Ed.2d 59 (1981) (citation omitted); *United States v. Miller,* 14 F.3d 761, 764 (2d Cir.1994). Because the district court's order met this standard, this court had jurisdiction to entertain Green Point's appeal, as well as the motion for a stay that accompanied it.

Although the application before us was for a stay and an expedited appeal, it was recognized by all the participants that, just as the district court's order would grant victory to the Plaintiffs, a stay of that order would grant victory to the Defendants. If we

stayed the district court's TRO, the conversion plan would take effect the next day, mooting Plaintiffs' efforts to block it. A stay ordinarily seeks to preserve the status quo pending further litigation. Because far more turned on our ruling, we determined to expedite the appeal and confront directly the issues it raised.

■ Although interim orders ordinarily are reviewed with considerable deference, greater scrutiny is required when the order will effectively award victory in the litigation. When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships, *see Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); the district court's decision must be correct (insofar as possible on what may be an incomplete record), and appellate review should be plenary. *See Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 471 (2d Cir.1980); *see also Bryan v. Koch*, 627 F.2d 612, 616 (2d Cir.1980). Because the district court's order had the effect of a permanent injunction finally resolving the issue before the court, we review it in the same manner as we would review such a final injunctive order.

■ We find it was error for the district court to issue the TRO. In our view, virtually all of the pertinent considerations disfavored granting such an order. The dispute involved a State chartered bank regulated by the State Superintendent; the Superintendent, after making modifications, had approved the Plan as being in the interest of the bank and its depositors. The New York State court had refused Plaintiffs' application to enjoin the conversion. The State Superintendent, furthermore, had cured the problems that were the focus of Plaintiffs' complaint. Finally, Plaintiffs pointed to no irreparable harm or violation of law justifying the issuance of a temporary restraint, much less a conclusive bar to the closing of the conversion.

In contrast, the harm inflicted by the TRO was great. It would prevent Green Point from closing its conversion sales within 45 days, with the consequence either of terminating the offer, or, if extended by the Superintendent, freeing subscribers to rescind or amend their subscriptions. *See* N.Y.Comp.Codes R. & Regs. tit. 3, § 86.-5(g)(2). To inform the subscribers of their new rights, acquired as the result of the expiration of the 45–day period, Green Point would have been required to issue a supplemental prospectus, implicating a new round of SEC clearances, and considerable attendant delay and expense. Because financial markets are in constant flux, furthermore, the substantial delays that would necessarily have resulted would have required potential investors to make a new investment decision. The delay might easily have upset the expectations of both the bank and the depositor/offerees under the Plan.

We find that Plaintiffs demonstrated no violation of their rights, no irreparable harm, no likelihood of success, perhaps not even a fair question for litigation, certainly no balance of hardships tipping in their direction, and no entitlement to injunctive relief.

\* \* \*

■ The district court's order contained no findings of fact or substantive conclusions of law, beyond stating that the Plaintiffs were "likely to suffer irreparable harm" and "have a likelihood of success on the merits." As with the injunctive order in *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991), these statements did "not provide any basis on which the appellate court may assess whether the district court has properly exercised its discretion." We recognize that the district court's order was in form a TRO, and that Rule 52(a)'s requirement of findings of fact and conclusions of law upon the issuance of interlocutory injunctions does not apply to a TRO. Fed.R.Civ.P. 52(a). TROs are exempted from the requirement of express findings presumably because they are characteristically issued in haste, in emergency circumstances, to forestall irreparable harm, are of quite limited duration, and are exempt from appellate review. Nonetheless, courts should not be excessively tied to labels. In the rare instance like this one, where the TRO will dispose of all that is at stake in the litigation, it is highly useful for the district court to make findings to explain its ruling. Such an order is appealable under

the principles of *Carson*, 450 U.S. at 84, 101 S.Ct. at 996–97; without findings to explain the district court's action, the court of appeals will have difficulty understanding the basis of the ruling and determining whether the district court applied the law correctly.

## CONCLUSION

For the reasons stated above, and as recited in our order of January 28, 1994, we have granted the motion to expedite the appeal and have vacated the TRO issued by the district court.