**PRECEDENTIAL**
**ICO-005E**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1784
_____

AARON HOPE; IWAN RAHARDJA
JESUS DE LA PENA;
RAKIBU ADAM DUC VIET LAM; YELENA
MUKHINA NAHOM GEBRETNISAE;
ISMAIL MUHAMMED; GLENN WEITHERS
KONSTANTIN BUGARENKO;
BRISIO BALDERAS-DOMINGUEZ; VIVIANA
CEBALLOS; WILDERS PAUL;
MARCOS JAVIER ORTIZ MATOS; ALEXANDER
ALVARENGA ARMANDO AVECILLA;
COSWIN RICARDO MURRAY; EDWIN LUIS
CRISOSTOMO RODRIGUEZ;
ELDON BERNARD BRIETTE; DEMBO SANNOH;
JESUS ANGEL JUAREZ PANTOJA;
ALGER FRANCOIS

v.

WARDEN YORK COUNTY PRISON; WARDEN
PIKE COUNTY CORRECTIONAL FACILITY;

DIRECTOR PHILADELPHIA FIELD OFFICE
IMMIGRATION AND CUSTOMS ENFORCEMENT;
DIRECTOR UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-20-cv-00562
District Judge: The Honorable John E. Jones, III

_____

Before:  SMITH, *Chief Judge*, HARDIMAN and
SCIRICA, *Circuit Judges.*[1]

(Opinion filed: April 21, 2020)

Richard Euliss
Harlan W. Glasser
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

_____

[1] Although Judge Shwartz is a member of this standing
motions panel, she is recused from this proceeding.

Jeffrey S. Robins
United States Department of Justice
Office of Immigration Litigation
Room 6040
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Appellants*

Carla G. Graff
Kelly A. Krellner
Thomas J. Miller
Will W. Sachse
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

Vanessa Stine
Muneeda S. Talukder
American Civil Liberties Union of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19106

Witold J. Walczak
American Civil Liberties Union
P.O. Box 23058
Pittsburgh, PA 15222

*Counsel for Appellees*

---

## OPINION OF THE COURT

---

SMITH, *Chief Judge*.

In this interlocutory appeal, the Government contests the District Court's order directing the immediate release of twenty immigration detainees because of the COVID-19 pandemic.[2] Before we may even consider the merits of the Government's appeal, we must of course determine that we have appellate jurisdiction. By order entered April 15, 2020, we notified the parties that jurisdiction exists. We now provide the reasons for that determination.

## I.

On April 3, 2020, a diverse group of twenty immigration detainees[3] housed at York County Prison (York) and Pike County Correctional Facility (Pike) filed the underlying habeas petition pursuant to 28 U.S.C. § 2241. The petitioners sought immediate release,

---

[2] COVID-19 is a highly contagious respiratory virus that poses unique risks in population-dense facilities. *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 8, 2020).

[3] Initially, there were twenty-two petitioners, but two were released by agreement with the Government.

claiming that due to various underlying health conditions, their continued detention during the COVID-19 pandemic puts them at imminent risk of death or serious injury and thereby violates their constitutional rights. Concurrently with the petition, the petitioners filed a motion for a temporary restraining order (TRO) directing their immediate release.

The District Court responded quickly, concluding that the petitioners face irreparable harm and are likely to succeed on the merits, *see* Mem. and Order 6–11 (Apr. 7, 2020), ECF No. 11, that the Government would "face very little potential harm from Petitioner's [sic] immediate release," and that "the public interest strongly encourages Petitioners' release," *id.* at 12. The District Court did not even wait for a response from the Government. It granted the TRO, directed that Petitioners be released immediately on their own recognizance, and set the TRO to expire on April 20, 2020 at 5:00 p.m. The District Court also required that, no later than noon on April 13, 2020, the Government was to show cause why the TRO should not be converted to a preliminary injunction.

The same day the TRO issued, the Government moved for reconsideration and stay of the TRO. It signaled that it had substantial legal arguments to present in opposition, concerning both the petitioners' likelihood of success on the merits and the likelihood of irreparable harm. *See* Mot. Recons. 2. In addition, the Government provided a declaration describing conditions at York and Pike along with details of the petitioners' criminal

5

histories. Still later that day, the District Court granted the Government's motion for reconsideration, stayed its own order, and directed the petitioners to respond. They did so promptly. The Government also quickly filed a response opposing the habeas petition and the TRO.

On Friday, April 10, 2020, the District Court denied reconsideration on grounds that the Government had failed to demonstrate a change in controlling law, provide previously unavailable evidence, or show a clear error of law or the need to prevent manifest injustice.[4] It therefore lifted the stay and again ordered the Government to immediately release the petitioners, this time extending the release period "until such time as the COVID-19 state of emergency as declared by the Governor of the Commonwealth of Pennsylvania is lifted, or by further Order of this Court." Order 5 (Apr. 10, 2020), ECF No. 22. But the District Court's order also stated that "the TRO expires on April 20, 2020 at 5:00 p.m." *Id.* at 6. And, in an apparent attempt to allay some of the concerns expressed in the Government's submissions, the District Court attached conditions to the petitioners' release, including, among others, that the order "expires immediately if a Petitioner absconds," a requirement that "Petitioners shall report their whereabouts once per week to their attorneys, who in turn shall report to the Respondents if a Petitioner has absconded," a mandate to

---

[4] The District Court gave no indication that it had considered the Government's response to the habeas petition. *See* Order 1 (Apr. 10, 2020), ECF No. 22.

appear at all removal hearings and to comply with certain final deportation orders, and an allowance that the Government may "tak[e] Petitioners back into custody should they commit any further crimes or otherwise violate the terms of their release." *Id.* at 5–6.

The Government immediately appealed from the District Court's April 7 and April 10 orders. It simultaneously moved the District Court to stay the petitioners' release, and the District Court summarily denied the stay request. In response, the Government sought a temporary administrative stay from this Court, which we granted within hours of the request. Although the District Court lifted its April 7 stay the same day we granted a temporary administrative stay, the Government reports that, in the brief period between the two orders, nineteen of the twenty petitioners were released, and none have been re-detained.[5] *See* Gov't Emer. Mot. Stay 11.

---

[5] The release of the majority of the petitioners does not undermine our jurisdiction. For purposes of jurisdiction over an immigration-related habeas corpus claim, a petitioner must be in the "custody" of the federal immigration agency at the time the petition is filed. 28 U.S.C. § 2241(c); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 172 (3d Cir. 2006). "Custody" includes incarceration. *Id*. A subsequent release from incarceration does not divest this Court of jurisdiction. *Id*. at 173 n.7; *see also Chafin v.*

## II.

Typically, an interlocutory order granting or denying a TRO is not immediately appealable. *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 692 (3d Cir. 1997). A TRO is not an appealable "final decision[]" under 28 U.S.C. § 1291. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 460 F.3d 470, 476 (3d Cir. 2006) (a "final decision" generally is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment).[6] Although a TRO is a form of injunctive relief, and injunctions are ordinarily appealable under 28 U.S.C. § 1292(a),[7] an order granting a TRO generally is not considered an appealable injunction for practical reasons: "temporary restraining orders are of short duration and terminate with a ruling on the preliminary injunction, making an immediate appeal

---

*Chafin*, 568 U.S. 165, 172–73 (2013) (case is not moot where it is possible to grant relief to the prevailing party).

[6] *But see*, *e.g.*, *Virginia v. Tenneco, Inc.*, 538 F.2d 1026, 1030 (4th Cir. 1976) (concluding that the practical effect of the TRO in question, which granted the plaintiff all the relief it sought, made the order a final decision appealable under § 1291).

[7] Section 1292(a)(1) provides in relevant part: "the courts of appeals shall have jurisdiction of appeals from [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

unnecessary to protect the rights of the parties." *Nutrasweet*, 112 F.3d at 692 (citing *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991)).

Here, the District Court's orders purport to be TROs. But the unfolding global pandemic and health crisis with which the orders grapple are—as the District Court itself acknowledges, *see* Mem. and Order 6 (Apr. 7, 2020), ECF No. 11—anything but typical. We must carefully assess, given the nature of this TRO and the unusual circumstances from which it arises, whether an immediate appeal is necessary to protect the rights of the parties.[8] *See Nutrasweet*, 112 F.3d at 692–93.

## A.

We begin by considering the characteristics that distinguish a non-appealable TRO from an appealable preliminary injunction. Rule 65 of the Federal Rules of Civil Procedure differentiates between the two. A preliminary injunction must be issued with notice to the adverse party. Fed. R. Civ. P. 65(a)(1). A TRO, in contrast, may be issued without notice where it is "clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

---

[8] The parties were directed to file responses on the issue of appellate jurisdiction. We have considered these submissions in reaching our determination, and we commend counsel for their promptness and diligence.

9

Absent good cause or consent, such an order must expire within fourteen days. Fed. R. Civ. 65(b)(2).

As the Supreme Court has observed, "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute." *Granny Goose Foods Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). Accordingly, while TROs may be appropriate at times, they must be circumscribed in nature.

Importantly, TROs are ordinarily aimed at temporarily preserving the status quo. "[U]nder federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*; *see also J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (concluding that interim relief preserving the status quo is not merit-based and acknowledging a TRO as a "stay put[] equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation" (quoting *Foreman v. Dall. Cty.*, 193 F.3d 314, 323 (5th Cir. 1999), *abrogated on other grounds by Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) (internal quotation marks omitted))); *Christopher P. ex rel. Norma P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990) ("[T]he procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff

10

prevailing party status."); *Litton Sys., Inc. v. Sunstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ("The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." (citation omitted)).

Where, by contrast, a purported TRO goes beyond preservation of the status quo and mandates affirmative relief, the order may be immediately appealable under § 1292(a)(1). *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 473 U.S. 1301, 1304–05 (1985) (observing that "[o]nly if the District Court *granted* the temporary restraining order would it have disturbed the status quo" by preventing the implementation of new regulations, thereby implying that appellate jurisdiction would have been available in that circumstance); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963) (in a TRO proceeding, "it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial . . . [t]his is particularly true where the relief afforded, rather than preserving the status quo, completely changes it"); *see also Belknap v. Leary*, 427 F.2d 496, 498 (2d Cir. 1970) (purported TRO was "essentially affirmative" and thus, despite its short duration, was an appealable mandatory injunction under 28 U.S.C. § 1292(a)(1)).

The case for immediate appealability is even stronger where the effects of the purported TRO are substantial and potentially irreversible. An order may be appealed under § 1292(a)(1) if it has the "practical effect"

11

of an injunction and "further[s] the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (quoting *Balt. Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)). Similarly, the Court of Appeals for the District of Columbia Circuit concluded that an order purporting to be a TRO but requiring a government official to affirmatively engage in "unprecedented" mandatory action with "potent" and "irretrievable" diplomatic and environmental impact was an immediately appealable injunction under § 1292(a)(1). *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978). Several other courts of appeals stated they have jurisdiction to review a purported TRO if it "might have a serious, perhaps irreparable consequence and can be effactually challenged only by immediate appeal." *Ross v. Rell*, 398 F.3d 203, 204 (2d Cir. 2005) (quoting *Romer v. Green Point Savings Bank*, 27 F.3d 12, 15 (2d Cir. 1994) (cleaned up)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) ("[W]hen a grant or denial of a TRO might have a serious, perhaps irreparable, consequence, and can be effactually challenged only by immediate appeal, we may exercise appellate jurisdiction." (citation omitted)); *see also Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1005–06 (6th Cir. 2006) (collecting cases).

Thus, we look to the purpose and effect of a purported TRO to determine whether it may be appealed under § 1292(a)(1).

B.

With these principles in mind, we consider the District Court's orders. Although the District Court characterized its orders as TROs, we are plainly not bound by that choice of classification. When evaluating whether an order is an appealable injunction, we must look past labels to consider functional effects. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 669–70 (3d Cir. 2016). What matters "is what the court actually did, not what it said it did." *Id.* at 669 (citing *Sampson v. Murray*, 415 U.S. 61, 86–87 (1974)); *see also Miller v. Mitchell,* 598 F.3d 139, 145 (3d Cir. 2010) (reviewing TRO as a preliminary injunction because it was of indefinite duration and entered after both notice and an adversarial hearing); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982) (noting that when deciding jurisdiction, a reviewing court will look beyond "terminology to the actual content, purport, and effect of that which may . . . be described as a temporary restraining order or as a preliminary restraining order" (citation omitted)).

Because the District Court proceeded without affording the Government an opportunity to be heard, it purported to enter a TRO.[9] But its relief altered the status

---

[9]  Significantly, the District Court considered the Government's position only in deciding the motion to reconsider the April 7 order. But in that procedural context, the District Court confined the Government to the

quo, exceeding the temporary and limited nature of a TRO. *See Granny Goose*, 415 U.S. at 439. By directing the release of the twenty petitioners on their own recognizance, the District Court ordered mandatory, affirmative relief—indeed, the ultimate relief sought by the petitioners in their underlying habeas petition. The grant of affirmative relief is a strong indicator that the District Court's orders are immediately appealable under § 1292(a)(1). *See Ramara*, 814 F.3d at 672 (grant of ultimate relief is a factor in determining that an order is appealable under § 1292(a)(1)); *Tanner*, 316 F.2d at 808–09; *Adams*, 570 F.2d at 953; *Belknap*, 427 F.2d at 498.

Moreover, there is a substantial possibility that the petitioners' release will result—if it has not already—in serious and potentially irreversible consequences. That makes immediate appellate review both necessary and appropriate to protect the rights of the parties. *See Schiavo*, 403 F.3d at 1225; *Ross*, 398 F.3d at 204; *Adams*, 570 F.2d at 953. The Government argues that many petitioners are a flight risk, a danger to the community

limited grounds for reconsideration (*i.e.*, requiring it to demonstrate a change in controlling law, provide previously unavailable evidence, or show a clear error of law or the need to prevent manifest injustice). *See* Order 2 (April 10, 2020), ECF 22 (citing *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Although the Government filed a substantive opposition to the TRO request, the record does not reflect that the District Court ever considered it.

based on their individual criminal histories, and subject to mandatory detention under 8 U.S.C. § 1226(c).  *See* Gov't Mot. Stay Pending Appeal 17–19.  Additionally, although the District Court's orders purport to be of limited duration, the District Court's April 10 order directs the petitioners' release "until such time as the COVID-19 state of emergency as declared by the Governor of the Commonwealth of Pennsylvania is lifted, or by further Order of this Court."  Order at 5 (Apr. 10, 2020), ECF No. 22.  The order therefore can be read as having an indefinite duration and does not necessarily comply with the fourteen-day limitation in Fed. R. Civ. P. 65(b)(2).  Moreover, the orders do not mention the possibility of re-detention upon expiration of the purported TRO period, and they include no consideration of the practical difficulties involved in locating and re-detaining the petitioners should that become necessary.  A delayed appeal would increase the prospect that the effects of the District Court's order will last beyond the purported expiration of the TRO and, indeed, may potentially yield consequences that cannot be undone.

## III.

In sum, the District Court's orders affirmatively directing the immediate release of twenty immigration detainees will not evade our prompt appellate review simply by virtue of the District Court's invocation of the

15

label "TRO."[10]   An immediate appeal is necessary to protect the rights of the parties.  *See Nutrasweet*, 112 F.3d at 692.   For the reasons we have discussed, we have appellate jurisdiction under § 1292(a)(1) and will proceed to consider the appeal on the merits.[11]

---

[10] Because we have determined that jurisdiction exists under § 1292(a)(1), we need not address the Government's alternative suggestion to proceed under the All Writs Act, 28 U.S.C. § 1651.

[11] This opinion is limited to the issue of appellate jurisdiction.  Having concluded that jurisdiction exists, we will separately consider the merits after the parties have had the opportunity to brief the issues presented.